# PUBLIC SERVICE COMMISSION OF MARYLAND

*vs.*

# BROOKLYN AND CURTIS BAY LIGHT AND WATER COMPANY.

*Public service corporations: extension of service; prohibitive cost; rates; power of public service commission.*

A public service corporation can not be required to extend its plant into territory that it has not attempted to serve, when the probable revenue to be derived from such service is not sufficient to pay the interest on the cost of the extension and the maintenance of the service, and where such corporation, by reason of its inability to earn dividends and operating expenses, has not and can not raise the money for such purposes.    p. 619

Section 42 of Chapter 180 of the Acts of 1910, although giving to the public service commission broad powers over water companies does not authorize it to require a water company to extend its plant into territory it has not attempted to serve, when the probable revenues would be insufficient to pay the cost of the extension and maintenance.                              p. 619.

*Decided February 25th, 1914.*

Appeal from the Circuit Court of Baltimore City. (Gorter, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner and Stockbridge, JJ.

*Osborne I. Yellott,* Assistant General Counsel for the Public Service Commission (with whom was *W. Cabell Bruce,* General Counsel to the Public Service Commission, on the brief), for the appellants.

*Martin Lehmayer* and *Raymond S. Williams,* for the appellees.

Thomas, J., delivered the opinion of the Court.

The appellee was originally incorporated in 1892 under the general incorporation law "for the purpose of manufacturing electricity and gas for illuminating purposes and for all and any other purposes to which electricity, gas or magnetism may be applied, and for the sale, transportation or other disposition of the same in Anne Arundel County, and also for the purpose of furnishing and supplying water for drinking or other purposes to the dwellings, stores, shops and manufacturing establishments in Brooklyn and South Baltimore, in Anne Arundel County."

By the Act of 1892, Chapter 471, the name of the company was changed and its powers were enlarged. That Act provides that "said company shall also have power to dig such artesian or other wells, contract and build such works and reservoir or reservoirs as may be necessary to provide water for drinking or other purposes in the dwelling houses, stores, shops and manufacturing establishments in Brooklyn and South Baltimore, and their vicinity in Anne Arundel County,* * * and also to construct and lay gas and water pipes along and under the streets, squares, lanes, roads, public highways, bridges and alleys of Brooklyn and South Baltimore, and their vicinity in Anne Arundel County," etc.

South Baltimore or Curtis Bay and Brooklyn are unincorporated villages in Anne Arundel County, near Baltimore City. They are between one and two miles apart, and each contains about two thousand inhabitants. The distance between the outskirts of the villages is about one mile. Under its charter the appellee constructed its water works in Curtis Bay in 1893, and since then has been supplying water to the inhabitants of said village, but it never extended its water mains or pipes to or attempted to furnish water in Brooklyn.

By the Act of 1896, Chapter 173, another company was incorporated for the purpose of furnishing light and water in Brooklyn, but it never exercised any of the privileges or franchises granted by the Act.

In August, 1911, the Brooklyn Improvement Association filed its petition with the Public Service Commission of Maryland for the purpose of compelling the appellee to furnish water to the residents of Brooklyn. The appellee answered the petition alleging that while it had always been willing to furnish water in Brooklyn it had never "been financially able" to extend and enlarge its plant for that purpose; that the investment of the company in its water works established in Curtis Bay had not been rumunerative; that the company had not earned a dividend since 1906, and that it had a floating indebtedness of about $9,000.00; that it would be utterly unable to comply with an order as prayed for in said petition, and that to compel it to do so would amount to a confiscation of its property; that while under its charter it was authorized to furnish water in Brooklyn it was not required to do so.

There were filed with the Public Service Commission several estimates of the cost of enlarging the company's plant and of extending its water pipes to Brooklyn. Mr. Alfred M. Quick, an engineer employed by the Brooklyn Improvement Association, made two estimates, one amounting to $12,431.00 and the other to $14,279.00. Mr. Charles E. Phelps, chief engineer of the Commission, estimated the cost

at $23,800.00, and according to the estimate submitted by the general manager of the appellee the total cost of the necessary improvement would amount to $29,295.00. There was also filed with the Commission an agreement of the owners of two hundred and twelve houses in Brooklyn to purchase water from the appellee at the same rate the appellee furnished water to its patrons in Curtis Bay, and a statement of the appellee showing that its capital stock amounted to $100,000.00, "paid up in full"; that the value of the plant represented an expenditure of $75,000.00 on "plant and machinery" and $25,000.00 on land and buildings; that the total "operating revenue" of the appellee for the year 1910 or 1911 was $7,032.32, and that the total "operating expenses," for the same year, was $7,891.90, and that the appellee had a floating indebtedness of about $8,000.00.

In disposing of the case, the Public Service Commission, after referring to the several estimates of the cost of extending the appellee's plant, said: "Assuming that $25,000.00 will finance the extensions and that the debt is now $8,000.00, we would have a total debt of $33,000, upon which the interest charged would be $1,650 at 5 per cent. and $1,980 at 6 per cent. Two hundred and twelve services at an average of ten dollars would produce a revenue of $2,120, so that the service to Brooklyn would take care of the interest upon the cost of the extension, and upon the present floating debt, and this at the minimum consumption to be expected from the date of installation and with a reasonable assurance that within a short time the number of consumers would be considerably increased.

"It is proper to state that in all of the estimates it is assumed that service pipes will be paid for by the consumers.

"Upon a review of the whole case, we are of the opinion that the Brooklyn and Curtis Bay Light and Water Company should be required to extend its water mains and systems to the town of Brooklyn, and that under the circumstances this requirement will not lay an undue burden upon the company. When the extension is completed it will have a plant

of the approximate value of $125,000, upon which it should
not be difficult to obtain a loan sufficient to construct the ex-
tension and fund its floating debt, especially when the prob-
abilities indicate that under the new order of things the plant
will be self-sustaining, whereas now it is increasing its float-
ing debt from year to year."

Accordingly the Commission, in April, 1912, passed an
order requiring the appellee to extend its water mains and
pipes to Brooklyn, and further providing, "That from and
after the first of December, nineteen hundred and twelve, the
said Brooklyn and Curtis Bay Light and Water Company
furnish to the citizens of said town of Brooklyn an adequate
supply of water through and by means of the mains and dis-
tribution system hereinbefore directed to be installed."

On the 16th of May, 1912, the appellee filed its bill of
complaint in the Circuit Court of Baltimore City against the
Public Service Commission, setting out the facts and the
proceedings to which we have referred; alleging that its
charter is not a mandatory charter but a permissive one, and
that it does not impose an obligation upon the company to
furnish water to the residents of Brooklyn; that the Com-
mission had no power to pass the order referred to; that the
company had no means of raising the money necessary to
enable it to extend its mains and enlarge its plant; that it
would be impossible to comply with said order and praying
that the same be vacated and set aside. After a hearing the
Court below held that the order of the Commission was un-
lawful, and that the service required of the appellee was un-
reasonable, and passed a decree setting it aside. From that
decree the Commission appealed.

At the trial of the case in the Court below the plaintiff,
appellee, proved by Henry Adams, a consulting engineer,
who had examined the order of the Commission, and the
location and condition of the appellee's plant, that the cost
of the necessary extension and enlargement of the plant in
order to comply with the terms of said order, would be $42,-
· 878.00; that the revenue the company would derive from

the proposed extension, based upon two hundred and twelve service connections, would amount to about five and one-half per cent. of the amount of said cost, and that upon a basis of five hundred service connections the revenue received by the company would amount to about ten per cent.; that ten per cent. is not enough to pay the interest on the cost of enlarging the plant and to cover operating charges and depreciation, and that to justify the extension the revenue should amount to not less that fifteen per cent. of the cost.

B. Berner Burgunder, bond salesman for Mackubin, Goodrich & Company, stockbrokers of Baltimore City, and an expert in financial matters, testified that he had at the request of the appellee made an examination of its books for the purpose of ascertaining "the practicability of floating a bond issue for the improvements," and that he reported to the president of the company on May 15th, 1913, as follows: "The company could not possibly sell a bond bearing less than 6 per cent interest, and would no doubt be compelled to take 95 or even less for the entire issue. An estimate of the amount of money needed varies from $17,000 up to above $40,000, and to raise a sum of about $38,000 it would require a sale of $40,000 six per cent bonds, which would call for an annual interest charge of $2,400. At the very lowest this bond ought to have a sinking fund of $1,000 a year, which would increase the fixed charges to about $3,400 annually.

"The net earnings of your corporation for the year of 1909 were $1,281.40; in 1910 there was a deficit of $199.32; in 1911 net earnings were $1,073.03, and in 1912, due to the fact that the B. & O. supply went dry, net earnings increased to $2,477.96. On the basis of these earnings and even taking into account the amount which you will probably receive from the proposed extension, I do not believe that the earnings are at all stable enough to warrant the sale of such an issue of bonds." He further testified that he based his conclusion upon the value of the property, the earnings of the company and the country or community it served, and that

in his opinion the appellee could not get anybody to take its bonds.

The Public Service Commission offered evidence tending to show the necessity for a general water supply in Brooklyn; that at times the standpipe of the appellee overflowed, indicating that the supply of water was greater than that needed for the accommodation of its patrons in Curtis Bay, and that there were errors in Mr. Adams' testimony of the cost of said extension of the appellee's plant in the items referring to house connections and meters, but no evidence was offered to contradict the testimony of Mr. Adams to the effect that the revenue to be derived from the enlargement of the appellee's plant should amount to not less than fifteen per cent of the cost in order to justify the extension required by the order of the Commission, or the testimony of Mr. Burgunder that it would be impossible for the appellee to float its bonds to the amount that would be necessary to cover the required enlargement and improvement of its plant.

The Commission reached the conclusion upon the several estimates then filed that, assuming that the extension would cost $25,000.00, the two hundred and twelve services at an average of ten dollars would produce a revenue sufficient to pay the interest on the cost of the extension and the floating debt of the company, and that under such circumstances "it should not be difficult" for the appellee to "obtain a loan sufficient to construct the extension and fund its floating debt." The uncontradicted evidence produced before the Court however shows that the probable revenue which the company would receive, even upon the basis of five hundred services, would amount to about ten per cent of the cost of the extension of the appellee's plant; that in order to justify such extension the revenue to be derived therefrom should amount to at least fifteen per cent, and that it would not be possible for the appellee to float its bonds to the amount of the probable cost of said improvements.

The briefs of counsel for the appellant and appellee have been chiefly devoted to the question whether the Public Serv-

ice Commission has the power to require the appellee to extend its mains and pipes to Brooklyn and to furnish water to the inhabitants of that village, but it is not necessary to determine that question in this case, for even if we assume the existence of that power the order of the Commission was not justified under the circumstances disclosed by the record.

There are cases to the effect that a railroad company may be required to perform a particular duty necessary for the convenience of the public even though it may involve some pecuniary loss to the company. *Atlantic Coast Line* v. *N. Car. Corp. Com'p.,* 206 U. S. 1; *Mo. Pac. Ry.* v. *Kansas,* 216 U. S. 262. But we know of no case holding that a public service corporation may be required to extend its plant into territory that it has not attempted to serve when the probable revenues to be derived from such service are not sufficient to pay the interest on the cost of the extension and the maintenance of the service, and where such corporation, by reason of its inability to earn dividends or operating expenses, has not the money to pay for said extension and is unable to sell its bonds for that purpose. Such a requirement would not only endanger the service the appellee is now rendering in Curtis Bay, but would result in disaster to the company and ultimate confiscation of its property.

Under section 42 of the Act of 1910, Ch. 180, p. 388, the Public Service Commission is given very broad powers in reference to water companies, but upon all the evidence in this case we think the order complained of was unreasonable, and the decree of the Court below must therefore be affirmed.

*Decree affirmed, with costs to the appellee.*