# THE NORTHERN CENTRAL RWY. CO.

*vs.*

## PHILIP D. LAIRD, JOSHUA W. HERING and E. CLAY TIMANUS, Constituting The Public Service Commission.

*Railroads : express trains and locals; right of way.   Public Service Commission : jurisdiction.*

A railroad company owes a duty to the passengers of its express trains as well as to those of its local trains, and the mere fact of an express train being late, and behind its schedule time, does not relieve the railroad company of such duty.          p. 151

In such cases the railraod company should consider the welfare of both closses of passengers, and adopt measures that will to some extent relieve passengers on the express trains as well as those on the locals.                              pp. 151-152.

An order of the Public Service Commission, that requires a railroad, whenever an express train is late, and behind the schedule time, to hold the express back until the local trains then due have all passed and left the tracks clear, is unreasonable and exceeds the power conferred by the statute.          p. 152

Such order would deprive the railroad company of the discretion which it needs at such times, for the proper and efficient management and operation of the road, and for the safety and general welfare of its passengers and the public.          p. 152

While the powers given the Public Service Commission are extensive, they are not to be extended by implication beyond what is necessary for their just and reasonable execution.
                                                                 p. 152

*Decided June 26th, 1914.*

Appeal from the Circuit Court of Baltimore City. (Duffy, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*John J. Donaldson* and *Shirley Carter,* for the appellant.

*W. Cabell Bruce,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellant is a corporation, incorporated under the laws of the State of Maryland and the Commonwealth of Pennsylvania, owning a line of railroad within said States and operating other lines in said States and in the State of New York. Included within the lines owned and operated by it is the road from Baltimore, Maryland, to Harrisburg, Pennsylvania, known as the Baltimore Division. A large number of trains are operated upon this road, many of which are interstate trains carrying passengers, freight and United States mails between Maryland and other States of the Union. These trains carry Washington and Baltimore passengers to and from Chicago, St. Louis and other points in the west, southwest and northwest, as far as the Pacific Coast, and to and from Buffalo and points north, not only in the United States, but in Canada, and many of said trains take through cars to and from Chicago, St. Louis, Buffalo and Niagara Falls. On April 1st, 1913, Albert M. Griffin and others residing between Cockeysville and Parkton, stations on the appellant's road in Baltimore County, Md., filed their complaint with the appellees, alleging that the local service they were receiving from the appellant company was inadequate.

At such time the early morning service from Parkton consisted of train No. 200, scheduled to leave Parkton at 6.50 and to arrive in Baltimore at 8.16, and No. 70, scheduled to leave Parkton at 7.32 and to arrive in Baltimore at 8.45. The last return trains were those leaving Baltimore at 7.20 and 11.54 P. M.

The petition of Griffin and others alleged that the patrons from Cockeysville to Baltimore have excellent service, and in their petition complained of the discrimination in favor of those located between said points, and suggested that

Parkton be made the terminus for all local trains instead of Cockeysville, but asked, if good reasons be assigned by the appellant company for its refusal to do so, that it be compelled to make the following changes in the schedule:

"(1) Start train No. 100 from Parkton, arriving at Calvert Station at about 6.45 A. M.

"(2) Start No. 104 from Parkton, arriving at Calvert Station at about 7.45 A. M.

"(3) Make the milk train No. 200 express from Cockeysville to Baltimore, putting off at Cockeysville passengers for intermediate points.

"(4) Make No. 205 express to Cockeysville, and then local to Parkton.

"(5) Add one additional accommodation train to Parkton, leaving Baltimore about 9.30 P. M."

Upon notice of such complaint being served upon the appellant, it answered, saying that the changes in service asked for "are of such a character that they could not be made without such interference with the passenger service on its lines, both through and local, as would cripple that service and do great injustice not only to its through traffic but to its local traffic to stations other than those between Cockeysville and Parkton, referred to in the complaint aforesaid, besides involving a great expense in addition to that of its present service, which would not be justified by any possible return from the service demanded."

Thereafter, on March 13, 1913, a hearing was had upon the complaint filed, at which the parties appeared and testimony was taken. Thereafter the appellant filed with the Commission what is termed in the proceedings before it, an offer of satisfaction. This offer, however, was not filed, as stated in the opinion of the Commission, until the Commission had reached its conclusion upon which it thereafter passed its order of April 7. The offer was addressed to the Public Service Commission and in it the appellant stated that since the above mentioned complaint was filed the company's

officers had endeavored to work out a plan that would give additional accommodations to travelers to and from Baltimore City using stations between Parkton and Cockeysville with due regard to local travel at Cockeysville and points south, and to through travel over the company's lines and its freight traffic; and had found the following to be the only practicable changes that could be made in the schedule:

"(1) Southward. Start train No. 100 from Parkton (instead of from Cockeysville) at 5.30 A. M., stopping at points between Parkton and Cockeysville and running from Cockeysville to Baltimore on its present schedule, reaching Calvert Station at 6.45 A. M."

"(2) Run train No. 121 (which now ends its run at Cockeysville) to Parkton, leaving Baltimore at about 10 P. M. and reaching Parkton at about 11.30 P. M., stopping at stations between Cockeysville and Parkton.

"(3) Such changes to be made at the time of the general spring change of schedule toward the latter part of May, in order to avoid the great expense of issuance of new time-tables in the short interval, and the difficulties attending a mere partial readjustment of train services during said interval.

"(4) That this company accordingly now undertakes by way of satisfaction of said complaint to make the changes in the last paragraph mentioned at the time therein set forth.

"(5) That these are the only changes that this company can make in the premises with a due regard to its duties as a common carrier towards its passengers generally, both through and local, and its shippers, through and local."

Thereafter, by its order of April 7, 1913, above mentioned, the Commission ordered:

"1st. That the Northern Central Railway Company start its train No. 100 from Parkton (instead of from Cockeysville as at present operated) at 5.30 A. M., stopping at stations between Parkton and Cockeysville, and running from Cockeysville to Baltimore on its present schedule, reaching Calvert Station at 6.45 A. M.

N. C. RWY. CO. vs. PUB. SERV. COM. 145

Md.]                    Opinion of the Court.

"2nd. That said Northern Central Railway Company run its train No. 121 (which now ends its run at Cockeysville) to Parkton, leaving Baltimore at 10 P. M. and reaching Parkton at about 11.30 P. M., stopping at stations between Cockeysville and Parkton.

"3rd. That the aforegoing changes in the operation of train No. 100 and train No. 121 be put into effect at the time of the general spring change of schedule in the month of Mary, 1913..

"4th. That said Northern Central Railway Company be, and it is hereby, required to operate its train No. 200 from Parkton to Baltimore (said train leaving Parkton at 6.50 A. M. and scheduled to arrive in Baltimore at 8.20 A. M.) on its published schedule time, and said company is further ordered to cease and desist from placing said train No. 200 on a sidetrack or otherwise detaining it when running on its own schedule time, and from holding it back at a point of origin in order to give right of way to through or interstate trains which have been delayed at points beyond the run of train No. 200, and which, by reason of such delay, can only be run to destination by displacing train No. 200 and depriving it of the time allotted to it by said published schedule.

"5th. That the rule of operation of train No. 200, contained in paragraph 4 of this order, shall apply generally to local trains operated by said company."

The appellant approved of the passage of so much of the order as is embraced in the first, second and third paragraphs, the changes in the service therein made being those suggested by it in its offer of satisfaction made to the Commission. But as to the fourth and fifth paragraphs of the order the appellant filed its petition with the Commission asking that such paragraphs be rescinded.

A hearing was given the appellants upon their petition, which resulted in the Commission dismissing it and refusing to rescind the fourth and fifth paragraphs of the order.

The appellant then filed its bill in the Circuit Court of Baltimore City, alleging substantially the facts as we have stated them, and asked, (1) that the Court declare void paragraphs four and five of the order passed by the appellees; (2) that the said appellees be enjoined and restrained from attempting to enforce said paragraphs; and (3) that a preliminary injunction be granted restraining and enjoining the appellees from attempting to enforce said paragraphs of said order until a hearing could be had.

An answer was filed thereto and testimony heard, whereupon the Court dismissed the bill. It is from that order that this appeal is taken.

The power and authority of the Commission is derived exclusively from the statute (Chap. 180, Acts of 1910, p. 338), that created it, and the amendments thereto. It has no other or greater authority than that which is conferred upon it by statute.

Section 24 of the aforesaid Act provides: "That if, in the judgment of the Commission, any common carrier, railroad corporation, or street railroad corporation, does not run trains enough, or cars enough, or possess or operate motive power enough, reasonably to accommodate the traffic, passenger and freight, transported by or offered for transportation to it, or does not run its trains or cars with sufficient frequency, or at a reasonable or proper time, having regard to safety, or does not run any train or trains, car or cars, upon a reasonable time schedule for the run, the Commission shall, after hearing either on its own motion or after complaint, have power to make an order directing any such railroad corporation, or street railroad corporation, to increase the number of its trains, or of its motive power, or to change the time for starting its trains, or cars, or to change the time schedule for the run of any train or car, or make any other suitable order that the Commission may determine *reasonably necessary* to accommodate and transport the traffic, passenger or freight, transported or offered for transportation."

It was under the above quoted section of the Act, we take it, that the order containing the aforesaid 4th and 5th paragraphs was passed.

Sections 11 and 43 of said Act confers upon any corporation subject to its provisions or any person or persons in interest,—that may be dissatisfied with any order of the Commission, the right to institute proceedings in the courts therein named, to vacate, set aside or have modified such order on the ground that "it is *unreasonable* or *unlawful.*"

It was under the authority of the last mentioned sections of the Act that the jurisdiction of the Court below was invoked by the appellant company.

If the aforesaid 4th and 5th paragraphs of the order were unreasonable, then the order to that extent was unlawful under the statute.

Therefore, one of the questions that should have been considered by the lower Court, and which is now before this Court on appeal is, were the aforesaid paragraphs of the order reasonable, when considered in the light of all the facts, circumstances and conditions here shown to have exsited, in relation to the operation of the appellant's road at the time of the passage of said order.

It is conceded on all sides that no precedent can be found for the passage of the order now under consideration. No case has been cited to us and we have not been able to find one in which the Interstate Commerce Commission or any of the Public Service Commissions of the various States of the Union, have passed a similar order.

The fourth paragraph requires the appellant company "to operate its train No. 200 from Parkton to Baltimore (said train leaving Parkton at 6:50 and scheduled to arrive in Baltimore at 8.20) *on its published schedule time,* and it was also ordered to cease and desist from placing said train No. 200 *on a side-track or otherwise detain it* when running on its own schedule time, *and from holding it back* at point of origin in order *to give the right of way to through or inter-*

148    N. C. RWY. CO. vs. PUB. SERV. COM.

Opinion of the Court.                    [124

*state trains* which have been delayed at points beyond the run of No. 200, etc."

The fifth paragraph makes the rule for the operation of train No. 200, contained in paragraph four of the order, apply generally to local trains operated by the appellant company.

It was disclosed in the investigation before the Commission that train No. 200 was frequently late in its arrival at Baltimore and it was conceded that these delays were caused by the delays occurring with the two interstate express trains Nos. 38 and 60 which should have reached Parkton, if on time, a short while before No. 200 was scheduled to leave that station. There appears in the record a statement showing that in December, 1912, train No. 200 was late in arriving at Baltimore on eighteen occasions, the aggregate time of such delays amounting to ninety-four minutes, making the average delay on each occasion lsss than six minutes.

As it is not controverted we will assume that the record of delay kept for December corresponds with the delays at other times throughout the year.

There were no complaints as to the delays occurring with other trains except No. 3. Some of the witnesses before the Commission said it at times was late in leaving Baltimore.

Train No. 200 was scheduled to leave Parkton daily (except Sunday) at 6:50 A. M. It stopped at each of the twenty-six stations between Parkton and Baltimore a distance of twenty-eight miles, arriving in Baltimore at 8:16 when on time. It was purely a local train carrying passengers and milk, and one hour and twenty-six minutes were required to make its run from Parkton to Baltimore.

Train No. 38 is a fast express train and as testified to by Mr. Hess, Passenger Train Master of the appellant company "is made up of one steel baggage car, and from nine to twelve steel pullmans, sleeping cars. These sleepers come from all points in the west, St. Louis, Chicago, Cincinnati, Detroit, Cleveland and Pittsburg, and is made up of one or more

cars from these points, according to the conditions of travel. They drain all the travel from the far west as far as the Pacific coast. Train No. 60 is made up of a sleeper from Buffalo, one from Rochester, and one from Oil City, which drains the northern or the Canadian territory, and coming to us at Harrisburg they follow each other very closely, and they arrive at Washington, when on time 8:26 and 8:40, respectively, and at that point they connect with the Southern Railroad, train No. 35. This Southern Railroad, train No. 35, has through pullmans and coaches to New Orleans, and as a matter of course, making connections for all intermediate points, and as this train No. 60 is due at Washington at 8:40, which is the later train of the two, this Southern train is due to leave at 8:50, so any amount of time either of these trains lose in arriving at Washington later than 8:40 involves that much delay to the southern train and its entire route to New Orleans."

The chief complaint made by Griffin and others as to the service they received was the need of an earlier morning train and an additional evening train leaving Baltimore about 10 o'clock. Both of these trains were supplied by the order of the Commission. The only reference made in the complaint to delays occurring in the operation of appellant's trains was that the train due to arrive in Baltimore at 8:20 A. M. "is seldom, if ever, on time, making it very unrealiable and unsatisfactory."

The Commission, in their opinion, speaking of the demands of the petitioners, said: "The Commission, after careful consideration, is of the opinion that to grant all of the changes asked for would disarrange the present schedule to an extent that the traffic on the Cockeysville-Parkton section of the road would not justify," and that the only changes it found practicable were those they granted in the order of April 7.

It was to correct the delays in the arrival of train No. 200 at Baltimore that the 4th paragraph of the order was passed.

It is unquestionably true that at times inconveniences follow such delays, especially so when they prevent the prompt arrival of passeengers at their places of business, which is complained of in this case. And we know too that it is tiresome and unpleasant to be side-tracked or detained at the station after the time of the departure of the train in order that a delayed train may pass, but it seems that such delays, here complained of, cannot be avoided by the appellant company, unless much greater and much more serious inconveniences are imposed on passengers upon other trains of the appellant company who are entitled to equal consideration in the management and operation of its road.

The company has attempted to avoid these delays without success, and the Commission in its opinion has said that the changes in the company's schedule made by it in its order of April 7th, 1913, were the only ones it found practicable to make.

Mr. Latrobe, General Agent of the appellant company at Baltimore, testified that local train No. 200 was never held back at Parkton longer than ten minutes, awaiting the arrival of either of the express trains No. 38 or 60. If those trains had not then arrived the local train was permitted to start upon its run, and was never "held back at any other point than Sparks, which is fifty minutes out of Baltimore." He also stated that if the local train was not held back or sidetracked for the express, that the latter train would be delayed thirty minutes in reaching Baltimore.

It was to save the thirty minutes to the express passengers that six minutes' delay was imposed upon the passengers of the local train.

But this delay, the Commission contends, should not be imposed upon the passengers of such local trains. In its opinion, it says: "In our judgment, where this condition exists, No. 38 and 60 have lost their right to occupy the track between Parkton and Baltimore, during the time when the track has been assigned to the local train."

There is a duty owing by the company to the passengers of the express train, as well as to the passengers of the local train, and its duty to the passengers of the express trains has not ended because his train is late and not on schedule time.

The fact that the train is late calls for greater efforts on the part of the company in advancing such train, although such delay may not have occurred upon its line, so as to enable it as far as possible to recover the time it has lost and to make its important connection at Washington with the Southern Railroad for points in the South.

It should not, we think, be so indifferently treated because so delayed and not on schedule time, as to be sidetracked and required to remain there until its run can be made without interfering with the schedule of some other train, as provided in the order of the Commission.   This restriction placed upon it might require it to be held for hours awaiting such opportunity.   There are many trains upon the road running upon schedule time, and by the order the delayed train is to await until the track is clear, and is not to interfere with the schedule time of any other local train; but if it could immediately follow at a safe distance No. 200 it would then consume at least one hour and thirty minutes in making the run from Parkton to Baltimore, when at any other time, when not trailing the local train, the run is made in forty-two minutes.

The order of the Commission gives the right of way to the local train, even though the express is only a few minutes late and when no time would be lost to either train in reaching the City of Baltimore, if the local was held for such time for the express to pass it.   In such cases and even in cases of emergency, no discretion is lodged in the company by the order of the Commission, but it is to be complied with; if not, the company is liable to heavy penalties for its failure to do so.   The company is not permitted by the rule in case of delays to consider the welfare of both classes of passengers and to adopt such measures that will

· to .some extent relieve both the local and express passengers. Other illustrations could be given showing that the requirements of the order are in our opinion unreasonable, but we think it unnecessary to do so.    The effect of the order is to deprive the railroad company of all discretion in respect to the operation of its trains at the .time. of such delays, which discretion, we think, is absolutely essential to the proper and efficient management and operation of the road and to the safety and general welfare of its passengers; and to the extent that the company is deprived of such discretion the Commission has by its general order attempted to operate the appellant's road, and in doing this we think it has exceeded the powers conferred upon it by the statute. "The Commission was given extensive powers, but they should not be extended by implication beyond what may be necessary for their just and reasonable execution.    They are not without limits when directed against the management or operations of railroads, and the Commission can not enforce a provision of law unless the authority to do so can be found in the statute."    *N. Y., N. H. & H. R. R.* v. *Wilcox,* 200 N. Y. 431.    See also, *Lord* v. *Equitable Life,* 194 N. Y. 212; *Binghampton L. H. & P. Co.* v. *Stevens,* 203 N. Y. 7; *Laird* v. *B. & O. R. R.,* 121 Md. 179.

· We will not discuss the 5th paragraph of the order, for what we have said as to the 4th applies with even greater force to it.    Nor will we express any opinion as to the other ground upon which the order is assailed, as it is unnecessary inasmuch as we declare the aforesaid 4th and 5th paragraphs of the order void for the reasons stated.

We will therefore reverse the order of the lower Court, dismissing the bill of the appellant.

> *Order reversed and case remanded, to the end*
> *that a decree may be passed in conformity with*
> *this opinion; the appellee to pay the costs.*