## PUBLIC SERVICE COMMISSION v. JOSEPH C. BYRON ET AL.

*Public Service Commission—Attack on Order—Venue— Municipal Electric Plant—Supply of Private Consumers.*

In a proceeding under Code, art. 23, sec. 404, against the Public Service Commission, to set aside an order passed by it, the commission is the only necessary party defendant, since any one not objecting to the order is by acquiescence identified with the public, whose rights and interests are the primary concern of the commission, and are protected thereby.        pp. 471, 472

In a proceeding against the commission to set aside its order allowing the Mayor and Council of Hagerstown to build and operate a new electric plant, in place of that previously operated by the municipality, for the supply of private consumers, and to issue bonds therefor, while the municipality, as being interested, could have been made a defendant, in the discretion of the court, it suffered no material disadvantage by not being a party, all that it asked having been granted by the commission, the case being submitted to the court on the record made at the hearing before the commission, and the counsel of the municipality co-operating with those of the commission before the reviewing court, and participating in the argument on appeal.    p. 473

In a proceeding to set aside an order of the Public Service Commission, the commission, being the only necessary party defendant, by appearing generally waived any question of venue, the interposition of such a defense being the privilege of the defendant.                            pp. 473, 474

Under Code, art. 23, sec. 404, providing that a party complaining of an order of the commission may commence an action against the commission to vacate the order "in the circuit court for any county or before any judge of the supreme bench of Baltimore City, in any court of Baltimore City of appropriate jurisdiction which may be adopted for the purpose," a proceed-

ing to set aside an order granting permission to the municipality of Hagerstown to build and operate a new electric light plant could be brought in Baltimore City.                    pp. 474-477

Code, art. 23, sec. 390, providing that no gas or electric corporation shall begin construction or exercise any right or privilege under a franchise, without having obtained the permission and approval of the Public Service Commission, does not make a hearing or finding of facts a condition precedent to the grant of such permission and approval.                    p. 478

Even if a record of a specific finding of the facts upon which the order of the commission was founded were necessary, the opinion of the commission, filed with the order and by the order made a part thereof, was substantially such a finding, its import being that the proposed construction was so necessary or convenient for the public service as to be reasonable.    p. 479

Since by statute an order of the Public Service Commission will not be disturbed except upon clear and satisfactory evidence that it is unreasonable or unlawful, such an order, authorizing the Mayor and Council of Hagerstown to build and operate an electric plant for other than municipal purposes, and to issue its bonds to pay for the construction, extension, and improvement of the plant, can be set aside only if it is found unlawful or unreasonable either to the public, or to the municipality in its proprietary ownership or operation of the public utility.                    pp. 479-481

The question of the unreasonableness of an order of the commission is to be determined with respect to the effect of the order upon the public conceived as a whole, as contradistinguished from a private corporation or an individual alone or associated with others in any private legal relations.    p. 480

When the question of the reasonableness of an order of the commission reaches an appellate tribunal for review in an effort to have the order annulled, the court has no power to substitute its own judgment for that of the commission, and unless it be made to appear by clear and satisfactory evidence that the order was unreasonable, the court is powerless to set it aside on that ground.                    p. 481

In the grant by the Legislature to the City of Hagerstown of authority to generate and sell electric current for private

consumption, there was implied a duty to become equipped adequately to provide for, not only the then existing demands, but also any reasonably probable future growth or expansion in the demands.                                            p. 487

In determining the base on which a just and reasonable rate should rest, the value of any unreasonable excess of equipment will be ascertained and excluded by the commission from its computation.                                            p. 488

The grant by the Public Service Commission to the City of Hagerstown of authority to construct and operate a new electric plant for the purpose of supplying individual consumers as well as the municipality itself was not unreasonable because the public could get adequate service at reasonable rates from an existing utility company, in view of the fact that the company and the city had been competitors for twenty-five years in the supply of electricity to private consumers, and the erection of the new plant therefore involved, not the city's entry into a field of utility operation already adequately and completely occupied by a second utility enterprise, but merely the maintenance of the efficiency in its plant and equipment necessary for the adequate discharge of a public service, although the secondary effect would be to aid the city in competition with an existing rival.                                  pp. 488-490

*Decided July 8th, 1927.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Proceeding by Joseph C. Byron and others against Harold E. West and others, constituting the Public Service Commission of Maryland. From a decree for plaintiffs, defendants appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*William L. Rawls,* with whom were *Thomas H. Robinson, Attorney General,* and *J. Hubner Rice, Assistant Attorney General,* on the brief, for the appellants.

*Alexander Armstrong* and *Francis J. Carey,* with whom were *Piper, Carey & Hall,* and *Wm. P. Lane, Jr.,* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

The proceedings in this cause were begun in the Circuit Court of Baltimore City by six residents, taxpayers, purchasers and consumers of electricity in the municipality of Hagerstown, and by the Potomac Edison Company, a public service corporation incorporated by the State of Maryland, which is engaged in the selling and distributing of electric power and current to the public in the municipality and elsewhere, and which is a taxpayer to the municipality. The six individuals instituted the proceedings not only on their own behalf but also on that of all other purchasers and consumers and taxpayers in like situation. The defendants are Harold E. West, J. Frank Harper, and Ezra B. Whitman, in their official capacity as the persons constituting the Public Service Commission of Maryland.

The bill of complaint was founded on these allegations of fact. The municipality owns and operates a municipal electric plant by which the streets and public places of Hagerstown are lighted, and electric current is distributed and sold to the public in the municipality. On July 28th, 1923, the municipality applied to the commission for a certificate of authority to build, maintain, and operate a new three thousand kilowatt electric plant at an approximate cost of three hundred thousand dollars; and for authority to issue bonds whose principal amount would be three hundred thousand dollars. Upon the protest of the Potomac Edison Company and other taxpayers of the municipality, and after hearings and investigation, the commission filed, on December 31st, 1923, an opinion and order refusing the petition. The reasons assigned in the opinion for this action were that the commission found that the Potomac Edison Company's plant provided Hagerstown with an ample and abundant supply of electric current and gave it assurance, under regulation by the commission, of adequate and continuous service at rea-

sonable rates, so that the construction by the municipality of the projected new plant would be a wasteful duplication of facilities.

On April 9th, 1926, the municipality renewed its former application, and by. an amendment filed to its second petition, increased its estimate of the approximate cost of the plant to four hundred and twenty-five thousand dollars. The second petition and its amendment were in the form of independent and original proceedings, but the protests filed disputed the right of the municipality to make the second application, on the ground that it was a rehearing, and that no reason was assigned for a rehearing, as required by section 11 of the Public Service Commission Law (Code, art. 23, sec. 359), and by section 8 of the rules of practice and procedure of the commission. The protestants, also, resisted the granting of the authorization sought because the proposed new plant was not necessary nor as convenient for the public service. The commission dismissed the objection to the form of procedure and proceeded to a hearing of the parties in interest, at which testimony was presented by the litigants.

The bill of complaint averred that no evidence was introduced tending to show that the construction of the proposed plant would in any manner improve the character or increase the extent or economy of the electric service available in Hagerstown, or that such construction was necessary or convenient for the public service, but that the uncontradicted evidence did show that the company was rendering safe, adequate, and sufficient electric service at just and reasonable rates; and this it was ready, able, and willing to continue with its existing facilities, which were ample to take care of the increasing electrical demand within the ensuing five years.

On this state of the proof, the commission is charged with not finding the construction of the new municipal plant necessary or convenient for the public service, but nevertheless authorizing, on September 29th, 1926, the work to be done and the bonds to be issued. Both on account of the alleged absence of evidence and of the failure of the commission to

find the building of the plant necessary or convenient for the public service, the complainants maintain the order was unreasonable and unlawful, and its consequences prejudicial to the rights and interests of the complainants as taxpayers and of the Potomac Edison Company as a public utility already in the same field and prepared to furnish adequate service. On these allegations and grounds, the complainants prayed that the order of the Public Service Commission of September 29th, 1926, be vacated and set aside, and that they have general relief.

On the petition of the commission, the chancellor passed an order *nisi* making the Mayor and Council of Hagerstown a party defendant, and the municipality later appeared solely for the purpose of denying jurisdiction, on the ground that, although admitting the municipality was a necessary party, yet the municipality, being located in Washington County, could not be made subject to the process of any court other than those of Washington County in respect to the matters in controversy. The plaintiffs demurred to the defendant's petition that the municipality be made a party defendant, upon the theory that under the statute the commission was the defendant authorized.

By express leave of the court the commission filed its combined demurrer and answer, which, while replying to all the allegations of the bill of complaint, reserved its point of the legal insufficiency of the bill of complaint.

The chancellor overruled the demurrer to the bill of complaint, and sustained the demurrer to the petition of the commission, asking that the Mayor and Council of Hagerstown be made a codefendant, and these rulings raise the two questions: Was the municipality a necessary party defendant? And was the cause properly begun before a judge of the Supreme Bench of Baltimore City in the Circuit Court of Baltimore City?

1. Since the action is not of common law origin but of purely legislative creation, an answer to both inquiries must be sought in the statutory law.

By the Public Service Commission Law, section 11 (Code, art. 23, sec. 359), the right is given to any company, corporation, association, person, or partnership, subject to any of the provisions of the act, or any other person or party in interest, to proceed in the courts to vacate, set aside, or have modified any order of the commission on the grounds that such order is unreasonable or unlawful, and that the right so conferred shall be exercised in the manner as particularly set forth in a later section. The section to which reference is thus made was section 43 of the act, as now embodied in section 404 of article 23, and its most pertinent paragraphs follow:

"404. Any corporation subject to this sub-title, or any of the provisions of this sub-title, and any person in interest being dissatisfied with any order of the commission, fixing any rate or rates, tolls, charges, schedules, joint rate or rates, or any order fixing any regulations, practices, acts or service, may commence any action in the circuit court of any county, or before any judge of the supreme bench of Baltimore City, or any court of Baltimore City of appropriate jurisdiction which may be adopted for the purpose, against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, tolls, charges, schedules, joint rate or rates, fixed in such order is unlawful or that any such regulation, practice, act or service fixed in such order is unreasonable, in which action a copy of the complaint shall be served with the summons.

"The answer of the commission to the complaint shall be served and filed within twenty days after service of the complaint, whereupon said action shall be at issue and stand ready for trial upon fifteen days' notice to either party.

"All such actions shall have precedence over any civil cause of a different nature pending in such court, and the said court shall always be deemed open for the trial thereof, and the same shall be tried and determined as other civil actions."

While any corporation subject to the provisions of the statute or any person in interest may become plaintiff, the language of the statute plainly prescribes the commission as the only necessary defendant.

The proceedings authorized are confined to the orders of the commission; and the grounds of attack are limited either to their unlawfulness or to their unreasonableness, and any redress sought is against the commission, since it alone had the power to pass the objectionable order. The relief obtainable is consequently from the action of the commission in the exercise of an indivisible power to pass lawful and reasonable orders in the performance of its statutory duties.' If any corporate or private interest is adversely affected, it may attempt to enforce its position under the section cited, and hence its failure so to proceed is an indication of satisfaction or acquiescence in the order, which by statute will not be set aside or changed unless in the authorized action its opponent shall show by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. Code, art. 23, sec. 408. This presumption of the lawfulness and reasonableness of the order is founded on the assumption by the Legislature that the action of the commission would not be taken save in the public welfare and for sufficient cause. By the statute nominating the commission to maintain the legality and reasonableness of its own order, the commission became the statutory public defender or representative of all interests save those which are participating in the attack upon the order, since any one not objecting becomes through acquiescence identified with the public, whose rights and interest always are the primary concern of the commission, which at once asserts and protects them through its official position as defendant. The case at bar is a concrete illustration of an instance where the minor particular proprietary interest of the municipality of Hagerstown is coincident with and an element of the public's larger general interest, whose guardianship and care are committed by the statute to the commission as the defendant in these proceedings. Thus

in this capacity the commission becomes the official representative of the municipality in its proprietary rights and interests as a public utility. See *North Dakota v. Chicago & N. W. Ry. Co.*, 257 U. S. 485, 490; *Wichita Railroad & Light Co. v. Kansas Public Utilities Commn.*, 260 U. S. 48; *Smith v. Illinois Bell Telephone Co.*, 270 U. S. 587, 592; *Commonwealth of Pennsylvania v. West Virginia*, 262 U. S. 553, 595; *City of New York v. New York Telephone Co.*, 261 U. S. 315, 316; *In re Engelhard & Sons Co.*, 231 U. S. 646, 651.

That this is the import of the statute finds confirmation in the requirement that the answer of the commission shall be served and filed within a specified time, whereupon the action shall be at issue and ready for trial upon notice to either party; in the provisions that, if the evidence introduced by the plaintiff be different from or additional to that offered at the hearing before the commission, the court, unless the parties shall stipulate to the contrary, shall transmit the evidence to the commission, and stay the proceedings, in order to give the commission an opportunity to consider if any alteration should be made in its original order, and then to report its conclusion to the court for its action on the original or the modified order, as the case may be; by the privilege granted to "either party to said action" to appeal; and by the tenor of all the other provisions of the statute. Article 23, sections 404, 405, 407, 408. The practice, also, is in accord with the view here expressed, as is illustrated by these instances which, while not wholly analogous, are yet cases in which the authorized statutory litigation or judicial review was carried on between the utility corporation as plaintiff and the Public Service Commission as the sole defendant. *Public Service Commn. v. Northern Central Rwy. Co.*, 122 Md. 355; *Public Service Commn. v. Phila., B. & W. R. Co.*, 122 Md. 438; *Public Service Commn. v. Brooklyn & Curtis Bay Light and Water Co.*, 122 Md. 612; *Northern Central Rwy. Co. v. Public Service Commn.*, 124 Md. 141; *Pennsylvania R. Co. v. Public Service Commn.*, 126 Md. 59; *Public Service Commn. v. United Rwys. Co.*,

126 Md. 478; *Havre de Grace Bridge Co. v. Public Service Commn.,* 132 Md. 16. And see *City of Superior v. Douglas County Telephone Co.,* 141 Wis. 363; *Gates v. Public Service Commn.,* 86 Or. 442.

As the municipality was interested in the outcome of the proceedings, it would have been a proper party, and upon application could have been made, in the discretion of the trial court, a defendant. *Benson v. Public Service Commn.,* 141 Md. 398; *Chenoweth v. Public Service Commn.,* 143 Md. 622; *Wichita Railroad and Light Co. v. Kansas Public Utilities Commn.,* 260 U. S. 48. The municipality not only failed to intervene, but, when it was sought to be made a party by the commission, it resisted, because the complaint had not been filed in a court of Washington County. However, all that the municipality asked was granted by the commission, which cannot be said to have been antagonistic to the municipality, whose counsel appeared in co-operation with those of the commission before the reviewing court, and were on brief and heard in the argument on appeal. There was, therefore, no material disadvantage to the municipality in not being a party, especially since, when this case came on for trial, it was submitted on the record made before the commission at the hearing upon which the commission grounded its order.

The record at bar presents facts and circumstances so different from those before the Supreme Court of the United States in *Texas v. Interstate Commerce Commission,* 258 U. S. 158, that the decision is not applicable to the instant case. In the case cited the proceedings were not instituted in the proper forum, and with the United States made a party defendant in its capacity as the representative of the public, so as to bring the action within the statutory provisions for the review of the orders of the Interstate Commerce Commission. Pages 163-165. *North Dakota v. Chicago & N. W. Rwy. Co.,* 257 U. S. 485, 490. And see *Wichita Railroad & Light Co. v. Kansas Public Utilities Commn.,* 260 U. S. 48.

2. The second point on the demurrers was that the suit should have been brought in Washington County. The argu-

ment in support of this contention depends upon the unwarranted assumption that the Mayor and Council of Hagerstown was a necessary party, since, if it were not, the commission, by appearing generally in a court having jurisdiction over the subject-matter, waived any question of venue, whose interposition as a defence to the action is the privilege of the defendant. *Fairfax v. Chambers,* 75 Md. 604, 614, 615; *Gemundt v. Shipley,* 98 Md. 657, 662-664; *Hodgson v. Southern Bldg. Assn.,* 91 Md. 439, 452-453; *Ireton v. Baltimore,* 61 Md. 432, 434; *Carroll v. Lee,* 3 G. & J. 504, 509-10; *Brooks v. Delaplaine,* 1 Md. Ch. 351, 352; *Harrison v. Morton,* 87 Md. 671; *United States v. Hvoslef,* 237 U. S. 1, 11, 12; *Thames & Mersey Marine Ins. Co. v. United States,* 237 U. S. 19, 23; *St. Louis & San Francisco R. Co. v. McBride,* 141 U. S. 127, 130; *Central Trust Co. v. McGeorge,* 151 U. S. 129, 135.

Independently of the waiver of the point by the commission, the proceeding was properly begun in Baltimore City by the complainant, who was given the right to select the court of review. The proceedings authorized by section 404 of article 23 are not in their nature what is commonly known as an action at law or in equity. The procedure is not an original one, but the complaint arises from an order passed at the conclusion of an issue which has been heard and determined by a competent tribunal and in such a manner as to cause dissatisfaction to any corporation subject to the act or to any other party in interest. Neither the decision of a litigated question by a public body having jurisdiction of the subject-matter, nor the right to have such decision reviewed, constitutes a cause of action for either party. Here the contemplated proceeding can only vacate or set aside the order for either its unlawfulness or its unreasonableness. If it be invalid on either specified ground, it is so because of the nature or the form of the commission's order, which a court has no power to alter, change, modify or substitute its own decree for, but can only accept or reject in the form finally formulated by the commission.

If an error within the limitations imposed by the statute

be shown to exist in the order passed by the commission, and
the complaint of the party aggrieved and the answer of the
commission be filed, the trial is not *de novo,* and the statute
requires a transcript of all the papers, proceedings and evi-
dence before the commission, except such as are omitted by
the stipulation in writing of the parties, to be filed in the
trial court, and the plaintiff, but not the defendant, may
offer evidence.  If the plaintiff's testimony is found by the
court to be different from or additional to that offered upon
the hearing before the commission, the court is bound to
transmit a copy of this evidence to the commission, and to
stay further proceedings for fifteen days from the date of
such transmission, unless the parties shall both agree to the
contrary.  Upon the receipt of this evidence, the commission
shall consider the same, and may alter, modify, amend or
rescind its former order, and shall report its action to the
court within ten days from the receipt of the evidence.
Should the commission rescind its order, the action will be
dismissed; but if the order should be changed in any way,
the amended order shall take the place of the original, and
the court's judgment shall be rendered upon the amended
order; but, if the original order should neither be rescinded
nor changed by the commission, the court's judgment shall
be rendered upon the original order.  The court's judgment
will either sustain or strike down the order as ultimately
framed by the commission, and either party has the right
of appeal to this tribunal.  Article 23, secs. 406, 405, 407.

It thus appears that the statutory review provided is *sui
generis,* and neither the practice in civil actions at law or in
equity afford any precedent for the solution of where such
an anomalous statutory proceedure should have been insti-
tuted.  Consequently, section 409 of article 23, providing
that "in all actions and proceedings in court arising under
this sub-title, all process shall be served and the practice
and rules of evidence shall be the same as in civil actions,
except as otherwise herein provided," imposes no limitation
upon the meaning of the language employed in section 404,
that the party complaining "may commence any action in the

circuit court for any county or before any judge of the supreme bench of Baltimore City, in any court of Baltimore City of appropriate jurisdiction which may be adopted for the purpose, against the commission as defendant." Nor is this language to be restricted by any limitation imposed upon the jurisdiction of any of the courts named, since the Constitution of Maryland expressly conferred upon the Legislature the power to enlarge their power, authority, and jurisdiction in all justiciable matters. Constitution, art. 4, par. 3, sec. 20, par. 4, sec. 39; Code, art. 26, sec. 38.

The portion of the statute under consideration clearly and specifically provides for the selection by the plaintiff of the forum for the complaint. It did not provide, as it might have done, that the proceedings should be instituted in a court of Baltimore City, the place prescribed for the principal office of the commission, or in a court having jurisdiction over either where the complainant resided, the hearing was held, the order was operative, or the subject-matter of the order was located. Arkansas: Digest of Stats. 1921, secs. 1698, 1609. Georgia: Code 1926, sec. 2625. Alabama: Civil Code 1923, secs. 9809, 9620. Arizona: Rev. Stats. 1913, title 9, secs. 2343, 2284A. Wisconsin, 1 Stats. 1925, secs. 196, 41. Connecticut: 2 Gen. Stats. 1819, sec. 3643. Illinois: Hurd Rev. Stats. 1925, ch. 111, sec. 72 (P. S. C. Law, sec. 68). Missouri: P. S. C. Law, sec. 111 (Rev. Stats. 1919, sec. 10522), sec. 11 (10420). Idaho: 1 Stats. 1919, sec. 2505. Oregon: 2 Laws 1920, sec. 6083. Indiana: 3 Burns Annot. Stats. 1926, sec. 12749 (P. S. C. Law, sec. 78). Minnesota: Gen. Stats. 1923, sec. 4650. Instead of limiting the forum to a definite jurisdiction, the law conferred upon the plaintiff the privilege of commencing "any action in the circuit court for any county or before any judge of the supreme bench of Baltimore City of appropriate jurisdiction which may be adopted for the purpose." The language is clear, apt and definite, and commits to the complainant the choice of the forum. In order to reach a different conclusion it would be necessary to interpolate an ambiguity where clarity and precision prevail. *Wachter v. McEvoy,*

125 Md. 399, 407. The party which selects the forum is the one which has the sole right to offer any testimony, and this involves a burden of procuring witnesses and a primary obligation for costs, which would commonly be a sufficient deterrent to any abuse of this right through the choice of a remote or inconvenient jurisdiction. The court, however, is not concerned with the wisdom of the provision. It is sufficient to find a lawful and unambiguous expression of legislative intent. Where a valid privilege is granted, it may not be withdrawn or circumscribed by judicial construction. A specific statutory designation of the forum for review presents a number of practical objections, which may well have been in the legislative mind when it made the deliberate decision to leave the matter to the action of the plaintiff in every particular case. In the removal of cases, the court has the power to designate any other trial court of competent jurisdiction in any part of the state, which is somewhat analogous to the privilege of the plaintiff under section 404. So far as this Court is cognizant, no substantive evil has developed from the provision in question; and the appeals to this Court reveal a practice in accordance with the views here expressed. *Public Service Commn. v. Brooklyn & Curtis Bay Light & Water Co.* (1914), 122 Md. 612; *Northern Central Rwy. Co. v. Laird* (1914), 124 Md. 141; *Yeatman v. Towers* (1915), 126 Md. 513; *Pennsylvania Railroad Company v. Towers* (1915), 126 Md. 59; *Havre de Grace etc. Co. v. Towers* (1918), 132 Md. 16.

The case of *Brenner v. Brenner,* 127 Md. 189, involved the construction of a provision of the Workmen's Compensation Act, presenting points of difference which distinguish it from the instant case, as will sufficiently appear from the preceding discussion.

3. The answer of the commission admitted many of the allegations of the bill of complaint; supplemented others by the statement of additional facts; denied the material averments upon which the relief of the complainants depended, and thus brought the proceeding to an issue both of law and of fact. The issue of law was raised by the com-

plainant assigning as a ground for the unlawfulness of the
order that neither in the order itself nor in the opinion was
there a specific recital or finding that the construction of the
proposed plant was necessary or convenient for the public
service.   This position is at variance with the declaration
of the statute that the commission's orders "shall not be
declared inoperative, illegal or void for any omission of a
technical nature in respect thereto," and that a substantial
compliance with the requirements of the law shall be suffi-
cient.   Code, art. 23, sec. 411.   The special provision of the
act, made applicable by section 347 to a municipal corpora-
tion operating an electric light and power plant, is section
390 of article 23, enacting that: "No gas corporation or elec-
trical corporation incorporated under the laws of this or any
other state shall begin construction or exercise any right or
privilege under any franchise hereafter granted or under
any franchise heretofore granted, but not heretofore actively
exercised, without first having obtained the permission and
approval of the commission."   *Hagerstown v. Littleton,* 143
Md. 591, 595-598.   No hearing or finding of facts is here
exacted as a condition precedent to the granting of the per-
mission or approval of the commission for the proposed con-
struction, as was the case with the public service commission
law of Kansas, construed by the Supreme Court of the
United States in *Wichita etc. Co. v. Public Utilities
Commn.,* 260 U. S. 48, 55, 56, 58, 59, which, while it held
that the Kansas act necessitated a precedent express finding
of fact, did not go so far as to declare that the evidence of
such finding must exclusively appear in the recitals of the
order itself.   See *Manufacturers' Ry. Co. v. United States,*
246 U. S. 457, 487.

No provision of the Maryland act has been cited, and none
has been found, in terms requiring the embodiment in the
order of a finding of fact that the construction of a proposed
public utility plant is necessary or convenient for the public
service.   As the order is dependent upon the prior determina-
tion by the commission that the proposed construction is so
necessary or convenient as to be reasonable, the existence of

the order is in itself sufficient evidence of the prior action
on the facts, which, while justifying its passage, did not
confer jurisdiction upon the commission over the subject-
matter. *Crisfield v. Ches. & Pot. Telephone Co.*, 131 Md.
444, 447; *Gregg v. Public Service Commn.*, 121 Md. 31.
Further, the power to vacate or set aside the order is con-
fined to the ground that the rate or rates fixed in such order
is unlawful or that any regulation, practice, act or service
fixed in such order is unreasonable, which demonstrates that
the basis of attack is always substantive and not for an infor-
mality. The test of the validity of the order is not a state-
ment of its reason for the order, but the unreasonableness of
the order. *Public Service Commission v. Kensington R.
Co.*, 131 Md. 649, 654; *Havre de Grace Bridge Co. v.
Public Service Commn.*, 132 Md. 16, 24; *Chenoweth v.
Public Service Commn.*, 143 Md. 622, 626.

Even if section 379, when read in connection with secs.
347, 390 and 398 of article 23, should be construed to require
a record of a specific finding of the facts upon which the
order was founded, the opinion of the commission, which
was filed with the order and by the order made a part there-
of, and which the order stated contained the commission's
finding of fact and conclusion thereon, was substantially a
recital or finding of the specific facts, whose import was
that the proposed construction was so necessary or convenient
for the public service as to be reasonable. These facts bring
us to the remaining issue, which is the reasonableness of the
order under all the facts and circumstances before the com-
mission, when weighed and considered in connection with
the applicable rules and principles of law.

4. The first rule is that the order will not be disturbed
except upon clear and satisfactory evidence that it is unrea-
sonable or unlawful. This is a legislative mandate which is
reinforced by the fact that the commission is a tribunal
erected by law, informed by experience, and assisted by a
trained corps of subordinates. Code, art. 23, sec. 408;
*Public Service Commn. v. Northern Central Ry. Co.*, 122
Md. 355, 388, 391, 392; *Havre de Grace Bridge Co. v. Public*

*Service Commn.,* 132 Md. 16, 24; *Interstate Commerce Commn. v. Union Pac. Ry. Co.,* 222 U. S. 541. Furthermore, unreasonableness is a relative term, and, before it may be accepted as an accurate definition, the order authorizing the Mayor and Council of Hagerstown to build, maintain, and operate, for other than municipal purposes, a plant and system for the manufacture and supplying of electricity, and to issue its bonds in an amount not to exceed three hundred thousand dollars as reasonably required "by the municipality" for the acquisition of property and for the construction, completion, extension and improvement of its plant and distribution system," must be found unreasonable either to the public or to the municipality in its proprietary ownership and operation of the public utility. The attack upon the reasonableness of the order is not made by the municipality, which had no reason to object, as the order conformed to its application. The order authorized nothing which was in conflict with any contractual or franchise rights and privileges of all or any of the appellees, and so the order can not be set aside, except on the ground that it was unreasonable with respect to the public. It is true that one of the appellees is a public service utility furnishing, under a municipal franchise, electric energy to private consumers within the limits of Hagerstown, but the fact that its private interests may suffer an economic loss through the increased operative efficiency and capacity of the municipality as its old and subsisting competitor within the boundaries of Hagerstown furnishes no legal basis to declare the order unreasonable under all the circumstances of this case (1). While every fact and circumstance which could be a factor in establishing the unreasonableness of the order should be considered, the theory of public regulation excludes the hypothesis of the State, through its public officers, representing or defending any interest other than that of the public (2). The question of unreasonableness is, therefore, to be determined with respect to the effect of the order upon the public conceived as a whole as contradistinguished from a private corporation or an individual alone or associated

with others in any private legal relations (3). When such a question reaches an appellate tribunal for review in an effort to have an order annulled, the court has no power to substitute its own judgment for that of the commission, and unless it is made to appear by clear and satisfactory evidence that the order was unreasonable, the courts are powerless to set it aside on that ground (4). (1) *People ex. rel. Shaner v. Chic., B. & Q. R. Co.,* 314 Ill. 445. (2) *State v. Chicago & Alton R. Co.,* 265 Mo. 646. (3) *Public Utilities Commn. v. Toledo, St. L. & W. R. Co.,* 286 Ill. 582. (4) *Pennsylvania R. Co. v. Public Service Commn.,* 126 Md. 59, 78; *Public Service Commn. v. Northern Central Ry. Co.,* 122 Md. 355, 388; *Louisville & N. R. Co. v. United States,* 245 U. S. 463, 466; *Interstate Commerce Commn. v. Union Pac. Ry Co.,* 222 U. S. 541, 547; *Grand Rapids & I. Ry. v. Railroad Commn.,* 188 Mich. 108.

The evidence to which these rules are applicable is voluminous, contradictory and, in large part, technical and theoretical. It would exceed any reasonable bounds to make a statement and analysis of the testimony which, with all of the proceedings, has been read and weighed. A large proportion of the material testimony is not disputed, and the major portion of what is in controversy is in respect to matters of opinion. The issue is, therefore, narrowed to the question of the relative weight of the evidence offered by the respective parties with reference to the unreasonableness of the order. A study of the evidence has resulted in the conviction that the reviewing court erred in its estimate of the evidence, which, in our judgment, obviously and substantially tended to support and sustain the order, and which, on the part of the appellees, was not sufficiently clear, satisfactory, and preponderating in probative value and force to establish the unlawfulness or unreasonableness of the order. *Supra.* In as succinct a manner as the importance of this case admits, the evidence and the conclusions upon which the commission apparently based its order will now be summarized.

One of the constituent companies of the Potomac Edison

Company is the Hagerstown Railway Company of Washington County, Maryland, which was incorporated in 1896, under the general incorporation laws, for the purpose of constructing and operating a passenger railway.  At that time the municipal lighting of Hagerstown was by contract with certain individuals, who, on February 28th, 1898, assigned their contract and their franchise and property to the railway company, which on the same day had its charter amended under the general law, so as to permit the company to generate, sell, and furnish electric current for lighting, heating, power, and other purposes.  And by chapter 479 of the Acts of 1898, the railway company obtained an amendment of its charter from the General Assembly to the same effect, with the right to light the streets, roads, and buildings in Washington County, and, with the consent of the proper officials, to plant its electric lines on the highways.  Two days before the approval of this act, the Legislature had empowered the municipality of Hagerstown, by chapter 381 of the Acts of 1898, to borrow not more than sixty thousand dollars by an issue of bonds, to establish an electric plant to generate and supply citizens with light and power.  And by chapter 75 of the Acts of 1900 the Legislature passed a second or supplementary act authorizing the municipality to construct and equip an electric power plant of sufficient capacity for the lighting of Hagerstown, and for supplying current to its citizens.  This statute contained a provision, which has ever since remained in effect, that, after the construction of the municipal plant, no public places should be lighted at the municipality's expense, "except by electrical or other appliances owned, operated and maintained" by the city.  *Hagerstown v. Hagerstown Rwy.,* 123 Md. 183, 197.  Meanwhile the railway company began, in 1898, the construction of a new electric plant in Hagerstown, which was later completed. The right of the municipality to erect the new municipal plant was contested by certain taxpayers, but its power to furnish its citizens with electric current and exclusively to light the streets and all other public places was affirmed in *Mealey v. Hagerstown,* 92 Md. 741.  The municipal plant

was constructed for the purpose of taking over the municipal
lighting on January 1st, 1901, which was the date of the
expiration of the contract under which the railway company
as assignee was furnishing the street lighting.    Since that
time the municipal plant has furnished light and power for
municipal and private consumption, and, by chapter 40 of
the Acts of 1920, the General Assembly granted the municipality
the right to issue bonds in an amount not to exceed
three hundred thousand dollars for the construction of a new
municipal electric light plant.    The authorities were about
to sell the bonds so authorized when a group of taxpayers
obtained an injunction against the building of the new electric
light plant and the sale of the bonds for any municipal
purposes, without having first obtained a certificate of authority
from the Public Service Commission.    The chancellor
directed the injunction to issue, taking the ground that the
municipality had no power to erect the plant for the purpose
of manufacturing electric current for sale for power purposes
to its citizens.

On appeal, it was decided in *Hagerstown v. Littleton,* 143
Md. 590, that the municipality had been granted by the
Acts of 1898, ch. 381, 1900, ch. 75, and 1920, ch. 40, the
power to furnish electric light and power to consumers in
Hagerstown, but that the municipality, being engaged in the
business of manufacturing and supplying electricity for other
than municipal purposes, was subject to the terms of the
Public Service Commission Law, and, therefore, could not
proceed with the contemplated construction until it had the
commission's certificate of authority.

The decision was rendered on June 26th, 1923; and the
municipality accordingly applied for the authority.    A protest
was filed against the issuance of the certificate, and on
December 31st, 1923, the Public Service Commission refused
the request on the ground that, inasmuch as the Potomac Edison
Company, the successor corporation to the Hagerstown
Railway Company, and the competitor of the municipality
within its corporate limits, had an ample and abundant supply
of current to meet the instant and future demands of

Hagerstown, the erection by the municipality of a new plant of greater capacity was a wasteful duplication of facilities, which it was the fixed policy of the commission to prevent. Instead of having recourse to the court, the municipality determined to seek relief at the hands of the General Assemly, which was about to convene. Two laws were passed to relieve the situation. The first was chapter 48 of the Acts of 1924, which amended sections 413-A and 447 of the then Code for the purpose of removing the Mayor and Council of Hagerstown from the operation of the Public Service Commission Law; and the second was chapter 380, which was enacted in lieu of chapter 48 of the Acts of 1920, and was substantially the same, except that it omitted the referendum. The first of these statutes was assailed as being unconstitutional when the municipality was preparing to carry the provisions of the Act of 1924, ch. 380, into effect, without seeking any certificate of authority from the commission. On appeal it was determined in *Littleton v. Hagerstown*, 150 Md. 163, that chapter 48 was void because it was in violation of section 33 of article 3 of the Constitution, which provides that the General Assembly shall pass no special law for any case for which provision has been made by an existing general law. *Crisfield v. Ches. & Pot. Telephone Co.*, 131 Md. 444; *Westminster v. Consolidated Public Utilities Co.*, 132 Md. 374. The present case was not before this Court for adjudication on that appeal, and the decision left perfect freedom of judgment in the consideration of the record at bar. It was said in that opinion, in the course of its argument, that one of the principal functions of the Public Service Commission is to prevent wasteful duplication; but, if the commission had "acted arbitrarily and without justification, the city's remedy was by resort to the courts and not to the Legislature." It is quite clear from the context that nothing in the present appeal was intended to be foreclosed, and that, in any future case before the commission, the question of wasteful duplication would have to be then determined upon its own particular facts and circumstances.

Upon chapter 48 of the Acts of 1924 being thus declared void, the municipality applied to the commission for a certificate of authority to construct its plant and to sell its bonds, and the commission issued its certificate to that effect.

For more than twenty years the municipality and the Potomac Edison Company, through its constituent companies, had together supplied the consumers of electric energy in Hagerstown. The municipality's continuing production and sale of electric current for light, heat, and power to consumers was a public necessity, so far as that fact could be established by legislative authorization, municipal adoption, and the mandate of a referendum. Whether the production and distribution of electric current for private use should be by municipal ownership or through private enterprise is a debatable governmental question, whose proper solution is no function of the courts. So many diverse elements enter into the relative merits of public or private ownership of such a public utility that the holding of one view or the other is but the expression of a judgment on a highly controversial subject. The fact that the City of Hagerstown holds the opinion that municipal production and distribution to private consumers is better for its interest, and should be maintained, is the expression of an opinion in a governmental matter that cannot be adjudged unreasonable on this record.

The municipality, in addition to furnishing the current for public purposes, has supplied its private patrons with a satisfactory and cheap service in successful competition with its local rival in the same field. At the hearing it was proven that the municipality had more miles of service lines than the Potomac Edison Company in Hagerstown, and it was shown by the company's own figures that, of all the electric current delivered in Hagerstown for private consumption, the municipality furnished twenty-eight *per centum* of that used for the generation of power, and sixty-eight *per centum* of the current for lighting and other commercial purposes. Again using the computation of the company, the total number of consumers on December 31st, 1925, of the company was 2,001, while that of the city was 7,057. Dur-

ing the year 1925 the city distributed 3,288,965 kilowatt hours for light, and the company 1,541,674 kilowatt hours. In the same year the city's delivery for power was 2,589,160 kilowatt hours and the company's was 6,698,278 kilowatt hours to only 207 consumers. In addition, the municipality generated for the city lighting 876,284 kilowatt hours, which is more than fifty-six *per centum* of the total used by the company's consumers of current for lighting. The excess (1,485,543) in kilowatt hours of current delivered by the company over what was sold (5,878,125) and used for public lighting (876,284) by the city, is thus seen to be due to the relatively large volume of current delivered by the company to a comparatively small number of users of electric power. The conditions in Hagerstown were rather unusual. The long existing competition, under regulation, had stabilized prices at a uniform rate for both utilities, and on December 31st, 1925, over eight thousand five hundred separate consumers of light were getting their service at rates appreciably lower than Frederick, Cumberland, Martinsburg, Waynesboro and Winchester, all of which were supplied by the Potomac Edison Company through the same system as at Hagerstown.

These figures represent the culmination of more than twenty years of municipal effort and operation. The proof on the part of the municipality indicated the plant to be a financial success, but with its efficiency and prosperity jeopardized by insufficient capacity and equipment to meet existing demands for current for power and future commercial and power requirements, accumulating with the natural expansion of the business, attendant upon the increase in the domestic use of electricity for heating and power purposes, and upon the growth of a vigorous and flourishing city. To meet these normal demands of its proprietary business, and of its obligation to light all of the streets, alleys and public places of a recently expanded city area, the General Assembly of Maryland again, in 1924, empowered the municipality to construct, erect, and maintain a city electric light plant, using such portions of the old plant as may be advantageous,

and to remodel the entire distribution system of the city light plant. Clear and substantial evidence on the part of the city tended to prove that it was inexpedient to remodel the present plant, and that the new plant should be built on another site on account of the insufficiency, temperature, and quality of the water, only available on the old location under costly operating conditions; that its equipment was rapidly becoming obsolete, was inadequate to take care of increasing demands of the municipality and its consumers, and that it was being run at its present maximum capacity under uneconomical limitations. The appellees do not seriously contend that this was not the situation which confronted the municipality. There can be no question that the municipality had the legal right to construct the new plant for its purely municipal purposes, and to build in excess of its present municipal needs. Nor is there any doubt that, in its proprietary operation of the plant, the city had the right, under the power conferred by the General Assembly, but subject to the authorization of the Public Service Commission, to provide for the future growth of its business of supplying private consumers, by the erection and maintenance of a new power plant of sufficient capacity to generate electricity necessary for its present and prospective requirements. In authorizing the city to generate and sell electric current for private consumption, there was implied in the grant a duty to become equipped adequately to provide for not only the then existing demands, but also for any reasonably probable future growth or expansion in the demand of the consumers for the product supplied. So long as this duty is done in good faith and in reasonable anticipation of sound business requirements, it is simply in fulfillment and discharge of the object of the General Assembly in conferring the power, and cannot be held to be unreasonable. See *Dickman v. Madison County Light & P. Co.,* 304 Ill. 470; *Frostburg Mining Co. v. C. & P. R. Co.,* 81 Md. 28, 32-34. It should be borne in mind that the municipality is not attempting to invade a field of utility operation already adequately and completely occupied by a second utility enter-

prise, but, after seeking expert advice and planning, is merely maintaining, in a prudent and reasonable manner, its position, where the municipality and the power company have been competitors in the same service for more than twenty years. The status of the municipality is, therefore, certainly not inferior to that of the power company within the City of Hagerstown, yet the latter advances the argument that it would be unreasonable to grant to the city its certificate of authority to erect the new plant, since the public "can get, and continue to get, safe and adequate service from the company at just and reasonable rates." The interest of the public in the rate is not in anywise prejudiced by the possibility that, in providing for future installation of machinery to generate additional power, the construction proposed may be in excess of any reasonable present needs of the city for its private business, since, in determining the base upon which a just and reasonable rate should rest, the value of any unreasonable excess of equipment will be ascertained and excluded by the commission from its computation. *Public Utilities Commn. v. Springfield Gas & Elec. Co.,* 291 Ill. 209.

The appellees have remaining the point that the erection of another electric light plant of increased capacity by the municipality is unwarranted because it would be a wasteful duplication of existing facilities supplying private consumers with electric current. The existing facilities are those of the city's competitor in the same service for at least a quarter of a century; and this single fact, of a subsisting competition which originated before the passage of the Public Service Commission Law, is sufficient to take this case out of the numerous decisions on appellees' brief to the general effect that one utility will not be permitted to enter a non-competitive territory where there is an existing adequate and satisfactory service. See *Chicago Motor Bus Co. v. Chicago Stage Co.,* 287 Ill. 320; *West Suburban Transportation Co. v. Chicago etc. Ry. Co.,* 309 Ill. 87; *Choate v. Illinois Commerce Commn.,* 309 Ill. 248; *Cincinnati Traction Co. v. Public Utilities Commn.,* 112 Ohio St. 699; *Illinois*

*Power & Light Co. v. Commerce Commn.*, 320 Ill. 427; *Superior Motor Bus Co. v. Community Bus Co.*, 320 Ill. 175; *Egyptian Transportation System v. Louisville & N. R. Co.*, 321 Ill. 580; *Roy v. Illinois Commerce Commn.*, 322 Ill. 452; *Eager v. Public Utilities Commn.*, 113 Ohio St. 404; *East End Traction Co. v. Public Utilities Commn.*, 115 Ohio St. 119; *Lykins v. Public Utilities Commn.*, 115 Ohio St. 376; *Scioto etc. Ry. Co. v. Public Utilities Commn.*, 115 Ohio St. 358; *Central Ohio Transit Co. v. Public Utilities Commn.*, 115 Ohio St. 383; *Sohngen v. Public Utilities Commn.*, 115 Ohio St. 449; *Columbus Rwy. etc. Co. v. Public Utilities Commn.*, 116 Ohio St. 92; *Chicago, R. I. & P. Ry. Co. v. State*, 126 Okla. 48; *Trescot Transfer Co. v. Sawyer*, 138 S. C. 337; *Abbott v. Public Utilities Commn.* (R. I.), 136 Atl. 490.

There is a wide difference between a request for authority to introduce competition, and one to maintain the necessary efficiency in the plant or equipment of a utility in order adequately to discharge a public service, which is the primary result sought, although the secondary effect may be to aid the appellant in competition with an existing rival. See *Harmony Electric Co. v. Public Service Commn.*, 78 Pa. Super. Ct. 271, affd. 275 Pa. 542; *Pennsylvania R. Co. v. Public Service Commn.*, 126 Md. 68. Between two lawfully established competitors in a single territory, each offering adequate, satisfactory, and efficient service at the same rates to their respective patrons, the law will not tolerate either direct or indirect discriminatory action by the Public Service Commission, and so will not uphold the contention that it is in the interest of the public to deny to one of the competitors the privilege of maintaining its efficiency through necessary construction or otherwise if proposed in good faith. *Public Service Commn. v. United Rwys. Co.*, 126 Md. 478, 495, 496. If this principle were not applied in the case at bar, the inevitable result would be that, after a brief period of stagnation, the present successful and profitable municipal undertaking would atrophy, entailing a large monetary loss in capital investment, and its commercial

business would pass to its present competitor, which would come in possession of a monopoly.  The desirability of such a result might occasion a difference of opinion, but it was not unreasonable for the commission to conclude that, in the final analysis, the consequences would be prejudicial to the interest of the public concerned, who were at once the owners, in their aggregate corporate capacity, of the municipal plant, and the consumers individually of electric light and power within the municipality.  The constant supply of electric current for private consumption in a city is of great importance to the community at large, and the enterprise in private hands is a complete monopoly.  The fair price to be paid for the current, under regulation but without competition, would be a matter of much complexity in the case of a large corporation supplying many municipalities from various and separated but interconnected generating stations, because so many various factors enter into the equation, and since provision must be made not only for the cost of a widespread operation, but also for the dividends to the shareholders.

Against this evidence and fair inferences the testimony of the appellees was not sufficient to prevail on a question of unreasonableness.  It may be economically unwise for electric current and power to be generated and sold by the municipality as the proprietor of a public service enterprise, but about this reasonable men may differ, as is demonstrated by the fact that the commission in 1923 was unanimously of the opinion that the certificate of authority should not be granted, and less than three years later, with a change of but one member, was a unit in granting the certificate of authority sought.  In our judgment the evidence establishes the order neither to be unlawful nor unreasonable, and this conclusion will result in a reversal of the decree passed on April 30th, 1927.

> *Decree reversed, with costs, and case remanded to the Circuit Court of Baltimore City, to the end that the order of said commission be affirmed, and the case remanded to the Public Service Commission.*