## MAYOR AND COUNCIL OF CRISFIELD *v.* PUBLIC SERVICE COMMISSION, ET AL.

[No. 23, January Term, 1944.]

180

*Decided March 28, 1944.*

182

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, and MELVIN, JJ.

*H. Warren Buckler,* with whom were *Niles, Barton, Morrow & Yost,* on the brief, for the appellant.

*Joseph Sherbow,* for the Public Service Commission of Maryland.

*F. W. C. Webb,* with whom were *Woodcock, Webb, Bounds & Travers,* on the brief, for the Eastern Shore Public Service Company of Maryland, appellees.

MELVIN, J., delivered the opinion of the Court.

On December 26, 1941, the Mayor and Council of Crisfield, a municipal corporation, applied to the Public Service Commission of Maryland for a certificate of authority to construct an electric light and power system for municipal and other purposes, under the provisions of Chapter 930 of the Acts of 1941. The Eastern Shore Public Service Company of Maryland, a corporation, hereinafter called "Eastern Shore", which was then, and is now, supplying Crisfield and environs with electricity, intervened in the proceedings and protested the granting of the application. After full and extended hearings, and the taking of voluminous testimony, the Commission refused to issue the certificate of authority and the Mayor and Council of Crisfield, thereupon, filed its petition to the Circuit Court for Somerset County seeking the reversal of this order, under the provisions of Section 415 of Article 23 of the Code (1939 Ed.), as to procedure. *Potomac Ed. Co. v. Public Service Comm.,* 165 Md. 462, 169 A. 480. The case was submitted to the Court on said petition and the answers of the Commission and "Eastern Shore", respectively, together with a transcript of the record which was before the Commission. No additional

testimony was sought to be introduced by the petitioner, although it, exclusively, had a right to do so. Code, Art. 23, Sec. 416. The Court's conclusion was to affirm the Commission's order and to dismiss the petition, and it was so decreed. From this decree the present appeal was taken.

The record discloses that this is a case of a municipality seeking to enter a field of utility operations already completely occupied by a private enterprise which is, admittedly, rendering to the residents of that municipality (Crisfield) "reasonably adequate, efficient and dependable electric light and power service." That is what the Commission found as a matter of fact, and the appellant in its petition to the Court admits it to be "substantially a true statement." It happens, also, to conform verbatim to the special purpose for which the statute in question was enacted, as expressed in the first section of the subtitle (116A).

However, the theory advanced by appellant in support of its position in the case is that this private corporation ("Eastern Shore") is without any franchise at all in Crisfield, it being contended that the only one it had expired on May 9, 1942, and that, therefore, it is not a question here of introducing competition in that particular area, which it is conceded would be unjustified, but of substituting municipal ownership and operation for that of the private enterprise whose rights have terminated.

By way of emphasizing this issue as the controlling one, the appellant, through its counsel, has declared at each stage of this litigation that it will withdraw its application and abandon the project in question unless it can operate exclusively in this field; so that if the Court should determine that the utility company presently serving Crisfield ("Eastern Shore") is there under a valid "perpetual" franchise, the city will withdraw, even though the franchise is, undeniably, not exclusive. This forthright attitude serves to identify at once the basic point of this appeal and to bring the Court directly to the consideration of it.

In reviewing the record we are confronted at the outset by the provisions of two statutes which are of special significance and applicability, being in the nature of guide posts showing the limitations upon the Court's jurisdiction in this particular kind of a case. The first is Section 116U of the Act of 1941 (Chapter 930) which, coming after the sections granting certain powers to the Mayor and Council of Crisfield, states, in effect, that the whole act is a nullity without the permission and approval of the Public Service Commission being first obtained and unless and until a certificate of authority is duly granted by said Commission. The exact wording of the statute is: "116U. None of the powers granted by Section 116A to 116X of this sub-title shall be exercised by the Mayor and Council without the permission and approval of the Public Service Commission of Maryland first had and obtained and unless and until a certificate of authority is duly granted by said Commission to construct and maintain and operate said municipal electric light and power system and issue said revenue notes, bonds or certificates, as provided in Section 401 of Article 23 of the Code of Public General Laws of Maryland, 1939 Edition."

This section (401) lays double emphasis on the necessity of obtaining a certificate of authority from the Public Service Commission, and on this point provides that: "No municipality, except the Mayor and City Council of Baltimore, shall build, maintain and operate for other than municipal purposes any works or systems for the manufacture and supplying of gas or electricity for lighting purposes without a certificate of authority granted by the Commission."

There is thus made manifest the legislative intent to clothe the Public Service Commission with supreme authority in such a matter, subject, only, to the condition that its orders must be both reasonable and lawful, as hereinafter more fully noted.

The second statute above referred to shows how strongly the presumptions are in favor of the Commis-

sion's orders whenever the court's review of any of them is sought. This is Section 419, Article 23, Code (1939 Ed.), which provides: "In all trials, actions and proceedings arising under the provisions of this sub-title, or growing out of the exercise of the authority and powers granted herein to the commission, the burden of proof shall be upon the party adverse to such commission, or seeking to set aside any determination, requirement, direction or order of said commission, to show by clear and satisfactory evidence that the determination, requirement, direction or order of the commission complained of is unreasonable or unlawful, as the case may be."

With these statutes of primary importance before us, the question which arises for the Court's decision is whether or not the appellant on this record has shown by clear and satisfactory evidence that the order appealed from is either unreasonable or unlawful.

The order, itself, is based upon three findings which are expressly made a part of it. These are:

"(1) Protestant ("Eastern Shore") has a perpetual franchise to render electric service in Crisfield;

"(2) The residents of Crisfield are now receiving reasonably adequate, efficient and dependable electric light and power service;

"(3) Public necessity and convenience require that the application of the Mayor and Council of Crisfield be disapproved."

Findings numbered (2) and (3), being purely of fact, may be disposed of without the necessity of extended comment, for the decision as to them is entirely free from difficulty. It is sufficient to say that the Court will not substitute its own judgment for that of the Public Service Commission where the record shows substantial evidence to support the latter's findings of fact, and, moreover, will not examine into the facts any further than to ascertain this result. The presumption of reasonableness is just that strong. This rule of law, as embodied in the statute, has become a legislative mandate designed to protect both the courts and the admin-

istrative tribunal from encroachment on their respective provinces, and to promote co-ordination between them when questions of law and of fact arise in any case. As a fact-finding body, representing the State in the supervision and control of public utilities corporations, the Public Service Commission has been provided by the Legislature with a staff of trained assistants and specialists for the very purpose of furnishing a sound foundation of facts for every finding by the Commission. The Courts have no such facilities or equipment to function in this field of governmental control over public utilities, and will not disturb the Commission's findings where there appears substantial evidence to support them. *Public Service Commission v. Byron,* 153 Md. 464, 471, 138 A. 404; *Baldwin v. Public Service Comm.,* 160 Md. 202, 152 A. 907; *Public Service Comm. v. Williams,* 167 Md. 316, 173 A. 259.

In the case at bar, not only is there substantial evidence to support the Commission's findings of fact, but the correctness of finding No. 2, that "the residents of Crisfield are now receiving reasonably adequate, efficient and dependable electric light and power service" is admitted by the appellant in its petition to the Court. The Commission has found, after a thorough study of the whole case, that the stated purpose for which the Act of 1941, Chapter 930, was enacted, is already being served by the present utility corporation. In so concluding it follows, logically, that "the public necessity and convenience require that the application of the Mayor and Council of Crisfield be disapproved," this being finding No. 3 upon which the Commission's order is based.

In the face of these facts, the appellate tribunal is now asked to substitute its own judgment for that of the Commission. In so many words, this Court has already ruled that this will not be done. *Public Service Commission v. Byron,* supra; *Public Service Commission v. Williams,* supra.

In the former case, in an opinion by Judge Parke, it is stated, at page 481 of 153 Md., at page 411 of 138A:

"When such a question (the reasonableness of the Commission's order) reaches an appellate tribunal for review in an effort to have an order annulled, the court has no power to substitute its own judgment for that of the commission, and unless it is made to appear by clear and satisfactory evidence that the order was unreasonable the courts are powerless to set it aside on that ground."

In the latter case, in an opinion also by Judge Parke, the Court said, at page 331 of 167 Md., at page 265 of 173 A.: "In the solution of this problem, the court may not substitute its own judgment for that of the commission. As said in *Public Service Comm. v. United Rwys. & Electric Co.*, 155 Md. 572, at page 580, 142 A. 870, 873: The commission's 'conclusion, of course, is subject to review, but, when supported by evidence, is accepted as final; not that its decision, involving, as it does, so many and such vast public interests, can be supported by a mere scintilla of proof, but the courts will not examine the facts further than to determine whether there was substantial evidence to support the order.' *Baldwin v. Public Service Comm.*, 160 Md. 202, 207, 152 A. 907; *Public Service Comm. v. Byron*, 153 Md. 464, 138 A. 404."

In view of this clearly defined law, considered in connection with the record before us, the Commission's order, insofar as it is based upon findings No. 2 and No. 3, must be affirmed.

This leaves open for consideration the Commission's finding numbered "(1)", which, as hereinbefore stated, is the controlling issue on this appeal. The finding is: "(1) Protestant (Eastern Shore) has a perpetual franchise to render electric service in Crisfield." While the determination of this issue by the Commission involved a mixed question of law and of fact, it was the Commission's plain duty, as well as its jurisdictional right, to make such a determination. It was required by the statutes, Chapter 930, Acts of 1941, and Section 401, Article 23, Code of 1939, to pass on the question as to

whether to grant or refuse a certificate of authority. That was an express duty, in order to perform which it became necessary for it to exercise the implied power of deciding what kind of a franchise, if any, was then held by the private utility corporation serving Crisfield, it being conceded in the case that but one electric light plant should be permitted to operate in that city.

The authority for the exercise of such implied power is found in Section 52 of Chapter 180 of the Acts of 1910, now codified as Section 425 of Article 23, Code of 1939, which provides that: "The public service commission hereby created shall have, in addition to the powers herein [specified], mentioned or indicated, all additional, implied and incidental powers, which may be proper and necessary to effectually carry out, perform and execute all the said powers herein * * * mentioned or indicated." This is a direct and explicit statement of the legislative intent to confer on the Commission full jurisdiction to completely execute the powers and duties delegated to it by the statute.

The test of the validity of its orders is always their reasonableness and lawfulness. The denial to it of jurisdiction to ascertain the basis of a reasonable or lawful order would be to give a construction to the Public Service Commission Law which would paralyze its operations in a case like the one at bar and thus thwart the legislative intent so plainly expressed.

The whole theory upon which both the Act of 1941 and the municipality's application is based being that there was no outstanding franchise after May 9, 1942, the Commission was faced with the duty of determining this preliminary question before it could reach a decision as to the reasonableness of an order either granting or refusing a certificate of authority. The lawfulness of the Commission's order is questioned by the appellant in only one particular—that the franchise of protestant had expired and that, consequently, there was an open field for the appellant to enter at the time it made its application. That is a question which, in the last analysis, resolves

itself into the fundamental one of the reasonableness, *vel non,* of the order, apart from its lawfulness.

If the Commission's order was lawful, that is to say, if it correctly found that protestant's franchise was a "perpetual" one, then its order was also reasonable, it being agreed that a certificate of authority should not have been granted to the municipality to enter a field of public utility operations that was already being adequately, efficiently and dependably served by an enterprise which had a legal right to be there. If, on the other hand, the Commission's order was unlawful, in that it incorrectly held the protestant's franchise had not expired on May 9, 1942, then it would necessarily follow that its order was unreasonable, as well as unlawful, for in that event the Commission's refusal to authorize the municipality's entrance into the field and its exercise of the powers granted to it by the statute, would be arbitrary and unjustified.

The final inquiry, decisive of the case, therefore becomes: What kind of a franchise, if any, did the protestant, "Eastern Shore", have in Crisfield at the time appellant made its application for a certificate of authority? The corporation claims that it had both a state-wide franchise authorizing it to enter Crisfield for the operations in question, and also a local franchise which its predecessors originally acquired under the general corporation laws of Maryland and which, by mesne assignments, became vested in it. The former claim is based on "Eastern Shore's" status as a "Class 13" corporation, created under the Public General Laws and empowered to do state-wide business with state-wide franchises; while the latter is based on its status as a "Class 17" corporation, with no franchise rights except in Somerset County.

For the purposes of this case—that is, of passing upon the correctness of the Commission's finding—it is immaterial whether at the time of the filing of its application for a certificate of authority "Eastern Shore" was operating in Crisfield under a "Class 13" or a "Class 17"

franchise. If it had a valid franchise at all to then and there operate, and was doing so adequately, efficiently and dependably, as found by the Commission, then the Court would have no justification for disturbing this finding and setting aside the Commission's order.

As the original franchise applicable to this case was the one granted Eastern Shore's predecessor as a "Class 17" corporation, it would be appropriate to consider that one first. Tracing its history from the beginning, the - record shows that electric service was commenced in Crisfield about 1902 by the Crisfield Ice Manufacturing Company, which was a "Class 17" corporation formed in 1892 under the general corporation laws of Maryland as then codified. Section 111, Article 23, Code of 1888. This section at first related to gas light companies but was amended by Chapter 306 of the Acts of 1886 so as to read: "For the promotion of gas light or electric light companies." The franchise conferred upon it also came from this amending statute, through the addition of Section 93A which gave the right to any electric light company formed under said article "to lay, construct or build, lines of conductors under, along, upon or over the streets, squares, lanes, alleys and roads, paved or unpaved and connect same with any manufactory public or private buildings, lamps or other structures or object, and with the place of supply; * * *."

This Section 93A became Section 111 of Article 23 in the Code of 1888. By Chapter 588 of the Acts of 1890, it was repealed and re-enacted so as to include Somerset and Carroll Counties. (Kent and Talbot Counties had been the only ones mentioned in the Act of 1886). It was again repealed and re-enacted in 1894, c. 308, so as to include Montgomery and Washington Counties, and as so amended became Section 143 of Article 23 of the Code of 1904. By Chapter 55, page 72, of the Acts of 1910, this section was once more repealed and re-enacted, and became Section 179 of Article 23 of the present Code of 1939.

As thus amended in 1910, the franchises granted prior thereto were not altered or affected in any way, the amendment simply making State-wide the offer of franchises to "Class 17" corporations instead of confining it to a few counties, as theretofore, and also requiring that the "proper assent of the municipal authorities" must be obtained. This, as hereinafter noted, could only apply to franchises not already being exercised.

It is relevant to emphasize at this point that the franchise which the Crisfield Ice Manufacturing Company acquired as a "Class 17" corporation was unlimited in duration, did not require the assent of the municipal authorities for its exercise, and that it extended to the environs of Crisfield as well as to the corporate limits of the City. All this is conceded by the appellant, which further conceded that the franchise, thus constituted, continued in full force and effect, and was actually exercised, from 1902 until the spring of 1917, without question.

In that year an incident occurred in this corporation's history which eventually became the basis of the pending litigation. Crisfield Ice Manufacturing Company in April, 1917, entered into a written agreement with one Albert Emanuel, of Ohio, for the sale of its property and assets, including its franchises. The vendee stipulated as a condition precedent to his purchase that the vendor obtain "a new franchise" to be prepared by the purchaser for the use of the streets and alleys necessary and useful for the operation of the business of the purchaser." This stipulation is incomprehensible, for the said Company unquestionably held at that time a franchise in Crisfield for the very purpose for which a new franchise was required by this purchaser, and the then existing franchise was of unlimited duration and covered more territory. However, in compliance with the said contract of sale, and under the authority conferred upon it by Chapter 529, page 1078, of the Acts of 1910, the Mayor and Council of Crisfield, on May 9, 1917, passed an ordinance granting to the Crisfield Ice Manufacturing

Company a new franchise. This, as expressly limited by said statute, was for a term of twenty-five years, thus bringing the expiration date to May 9, 1942.

Although this franchise was accepted by the Crisfield Ice Manufacturing Company and the sale to Emanuel was approved by the Public Service Commission, it is of special significance that there was no waiver or surrender of the existing "Class 17" franchise and no mention of the substitution of the one for the other; nor was any authority sought from the Public Service Commission by Crisfield Ice Manufacturing Company to exercise the franchise under the new ordinance or to abandon the original and then existing one.

This whole transaction fell through upon the purchaser's failure to consummate it, and on November 6, 1918, the Public Service Commission formally rescinded its orders of approval. Thereupon, the Crisfield Ice Manufacturing Company sold all its property and assets, including its franchise, to the Consumers Ice Company, whose name was subsequently changed to Consumers Public Service Company. This sale was duly approved by the Public Service Commission on November 7, 1918. In December, 1936, the Consumers Public Service Company was merged with the Eastern Shore Public Service Company, and this merger was, also, duly approved by the Commission.

From the time Crisfield Ice Manufacturing Company began to supply electric current to Crisfield and environs in 1902, the service of this public utility has been continuously rendered without interruption down to, and including, the present time, by Crisfield Ice Manufacturing Company and its successors, Consumers Public Service Company and Eastern Shore Public Service Company, all claiming to operate under the original "Class 17" franchise.

That this franchise was transferrable or assignable is not open to question in view of the provisions of the statute specifically authorizing such a transfer, and which was in effect when Crisfield Ice Manufacturing

Company sold out to Consumers, etc., Company in November, 1918, and transferred all of its assets, including franchises, to that corporation. Sec. 32, Art. 23, Code (1918 Supp.), now Sec. 38, Art 23, Code (1939). See also *Dillon Mun. Corp.*, 5 Ed. par. 1265; *Gontrum v. Union Ins. Co.*, 177 Md. 624, 11 A. 2d 625; *City of Detroit v. Detroit Co.*, 184 U. S. 368, 46 L. Ed. 592; *Hagerstown v. Hagerstown Rwy. Co.*, 123 Md. 183, 91. A. 170.

This attribute of transferrability of the "Class 17" franchise, in addition to its unlimited duration, supports the classification of it by the Public Service Commission as a "perpetual" franchise, notwithstanding the absence of a specific provision to that effect in the grant itself. While there are constitutional provisions in some states against grants in perpetuity, in Maryland there is no such restriction and the Legislature may, therefore, grant this kind of franchise, subject, only, to the reserved power to the State to alter, repeal and regulate, which is coupled with the paramount condition that vested property rights may not be destroyed or impaired. 37 *C. J. S., Franchises*, Sec. 26, page 180.

This brings us to the foundation point of appellant's case in seeking the annulment of the Commission's order, namely, that this "Class 17" franchise, admittedly of unlimited duration, was extinguished in 1917 and supplanted by the franchise granted on May 9th of that year by the Mayor and Council of Crisfield for the term of twenty-five years. Appellant contends that this extinguishment resulted, first, from the surrender or abandonment of the former franchise when the corporation sought and accepted the one in 1917, and, second, from the amendment or modification of the corporation's charter by Chapter 55, taken in connection with Chapter 529, of the Acts of 1910, the former being an amendment of a general law (Sec. 111, Art. 23, P. G. L. Code of 1888) and the latter of a local law (Art. 20, P. L. L. Code of 1888) pertaining to Crisfield.

These amendments, it is argued by appellant, were applicable to the charter of Crisfield Ice Manufacturing

194

Company and were, in fact, accepted and acted upon by it with the result that, in law, the only franchise left to the corporation was the one granted by the municipality for twenty-five years under the local law (Chapter 529, Acts of 1910), and which expired in May, 1942.

As to the surrender or abandonment of the original franchise, we find nothing in the record to support appellant's contention but find every indication to the contrary. That was the franchise granted under the general laws of the State and on the faith of which the corporation entered Crisfield in 1902, and made its initial capital investment, and the one which it has continuously exercised ever since, both in the city and in its environs.

To rule that this valuable franchise was voluntarily surrendered in exchange for a municipally granted one for twenty-five years and confined to a more restricted area, would not only be altogether unreasonable but would be arbitrary and presumptuous in the absence of any facts indicating such an intention on the holder's part, and would be attempting to accomplish by judicial decision what the Legislature itself could not do, constitutionally—that, destroy or impair a vested property right.

Moreover, the municipality did not impose that, or any other, condition when it granted the franchise in 1917. It is obvious that the only reason or purpose this was granted at all was because a prospective purchaser (Emanuel) required it, without any explanation whatever in the record for so doing. The legal effect was to add to, and not subtract from, the assets of the corporation; and there was no inconsistency in the holding of both franchises. *Cook on Corporations*, 8th Ed., Sec. 930; *City of Oakland v. Great Western Power Co.*, 186 Cal. 570, 200 P. 395.

It is to be especially noted that this second franchise conferred no rights or privileges upon Crisfield Ice Manufacturing Company which it did not already possess, with even more valuable attributes, under the first one, and also that there was no question involved here of

yielding one franchise for the other under a contract, express or implied, with the municipality. It is only necessary to point to these features of the case at bar to show the clear distinction between it and the two cases mainly relied on by the appellant in this connection, i. e., *Cleveland Electric Rwy. Co. v. Cleveland, C. C.,* 137 F. 111, and *Bankers' Trust Co. v. City of Raton,* 258 U. S. 328, 66 L. Ed. 642.

When the abortive transaction responsible for this superfluous franchise fell through, the corporation kept on operating exactly as it had been doing, without any question being raised as to the waiver, surrender or impairment of its original franchise. The Public Service Commission found, as a fact, that in obtaining from the Mayor and Council of Crisfield the franchise ordinance of May 9, 1917, the Crisfield Ice Manufacturing Company "did not intend to, and did not in fact, waive, surrender or impair any existing franchise * * * including that possessed by it as a Class 17 corporation, and which it had exercised therein (Crisfield) since 1902." The Commission further found that the municipality "did not intend to, and did not in fact, exact or require as a condition precedent to, or as a consideration for, such adoption, the waiver, surrender or impairment of any existing franchise." These findings being amply supported by reason and by the evidence, the Court will not disturb them.

This ruling is directly in line with the position taken by the Court in the case of *Brown v. Maryland T. & T. Co.,* 101 Md. 574-582, 61 A. 338-341. There the corporation was authorized under its charter to hold a telephone franchise, which by subsequent act was amended so as to include electric lighting. Eight years later the charter was further amended, authorizing the corporation, in addition to its powers under the laws of the State then in force, to connect its telephone lines with the lines of other companies, but the act contained nothing relating to the Company's electric light franchise. The plaintiff in that suit contended that the right of the corporation

to do an electric light business was abandoned by the acceptance of this last amendment. The Court overruled this contention in the following language, which is specially relevant to the case at bar: "We cannot agree to this view. We have held the defendant had an electric light franchise, and it is conceded that it had a telephone franchise. It is not to be assumed that the corporation would voluntarily relinquish either of them, or that in the absence of some good cause the Legislature would intentionally deprive its creature of such valuable rights. There is nothing affirmative upon the face of the act to support this contention of the plaintiff." See also *City of Duluth v. Abbott*, 8 Cir., 1902, 117 F. 137; *City of Osceola v. Middle States Utilities Co.*, 219 Iowa 192, 257 N. W. 340; *Town of Golconda v. Field*, 108 Ill. 419, 422.

The abandonment of a franchise is a question of intention or, as some times stated, an intention to abandon is an essential element of abandonment. 37 *C. J. S.*, *Franchises*, Sec. 26, p. 184; *Tehama County v. Pacific Gas & Electric Co.*, 33 Cal. App. 2d 465, 91 P. 2d 936; *City of Osceola v. Middle States Utilities Co., supra.* There is a complete absence of facts to show any such intention in the case at bar.

The appellant's contention that the charter amendments of 1910 had the effect, in law, of extinguishing this "Class 17" franchise is likewise untenable. A consideration of the amendments themselves shows this, for there is neither conflict nor interdependent relationship between them. Each is in a class by itself and each is sufficient to support a valid franchise, which is precisely the situation that developed in the case at bar. The general law (Sec. 111, Art. 23, Code of 1888) authorized the "Class 17" franchise and the 1910 amendment (Chapter 55) did not change or affect that franchise in any way because, as hereinafter pointed out, the assent of the municipal authorities thereby required could not be made to apply to a corporation of that class already exercising its franchise. The local law (Chapter 529, Acts of 1910)

pertained exclusively to the charter of Crisfield, and gave the Mayor and Council the power to grant franchises to electrical corporations for a period not exceeding twenty-five years. That was the authority for the franchise of 1917 to the Crisfield Ice Manufacturing Company and it was entirely independent of, and in addition to, the "Class 17" franchise granted under the general law.

Even assuming that this corporation was required by Chapter 55 to obtain "the proper assent of the municipal authorities" before continuing to exercise its franchise in Crisfield as it had been doing since 1902, that assent would be necessarily implied by the complete acquiescence of the municipality for seven years after the enactment of 1910. This acquiescence is further strengthened by the fact, as above noted, that when the municipality granted the Emanuel franchise in 1917, no mention or suggestion was made of giving up the original charter or of substituting this second one for it.

Appellant concedes that if this corporation (Crisfield Ice Manufacturing Company) had acquired a vested property right through the exercise of its Class 17 franchise prior to the statutes of 1910, this right could not be destroyed or impaired by the Legislature. Its position on this point, as expressed in its brief, is: "But the answer is that no vested property rights were disturbed by the 1910 amendments, which merely required that the Company obtained municipal consent to a further exercise of its charter powers. This requirement was pursuant to the terms of the contract reserving to the State the right exercised." That expresses the sum and substance of appellant's case, and it must stand or fall on the soundness or the unsoundness of this particular point.

In reviewing the case, and after considering the authorities applicable to it, we find the conclusion inescapable that Crisfield Ice Manufacturing Company did acquire a vested property right when, in 1902, it accepted the franchise offer of the State of Maryland and in good faith began the exercise of it by making capital expendi-

tures and furnishing service of this public utility. The law applicable here is clearly expressed by the Supreme Court of the United States in the leading case of *Russell v. Sebastian*, 233 U. S. 195, 204, 58 L. Ed. 912, as follows: "When the voice of the state declares that it is bound if its offer is accepted, and the question simply is with respect to the scope of the obligation, we should be slow to conclude that only a revocable license was intended. Moreover, the provision plainly contemplated the establishment of a plant devoted to the described public service and an assumption of the duty to perform that service. That the grant, resulting from an acceptance of the state's offer, constituted a contract, and vested in the accepting individual or corporation a property right, protected by the Federal Constitution, is not open to dispute in view of the repeated decisions of this court."

This principle is further aptly stated in the case of *City of Owensboro v. Cumberland Telephone & Telegraph Co.*, 230 U. S. 58, 66, 57 L. Ed. 1389, 1393. There the Court said: "If there be authority to make the grant, and it contains no limitation or qualification as to duration, the plainest principles of justice and right demand that it shall not be cut down, in the absence of some controlling principle of public policy. This conclusion finds support from a consideration of the public and permanent character of the business such companies conduct, and the large investment which is generally contemplated. If the grant be accepted and the contemplated expenditure made, the right cannot be destroyed by legislative enactment, or city ordinance based upon legislative power, without violating the prohibitions placed in the Constitution for the protection of property rights."

While the Maryland Constitution, Art. 3, Sec. 48, specifically reserved to the State the power to alter or repeal all charters formed under the general corporation laws, and a like reservation is to be found in the statutes, Code, 1939, Sec. 135, Art. 23, this reserved power may not be invoked to destroy or impair vested property rights. *Webster v. Cambridge Seminary*, 78 Md. 193,

28 A. 25; *Jackson v. Walsh*, 75 Md. 304, 23 A. 778; *People v. O'Brien*, 111 N. Y. 1, 18 N. E. 692; *Dartmouth College Case*, 4 Wheat. 518, 4 L. Ed. 629; *State v. Northern Cent. R. R. Co.*, 44 Md. 131; *Shields v. Ohio*, 95 U. S. 319, 324, 24 L. Ed. 357; *Sinking Fund Cases*, 99 U. S. 700, 720, 25 L. Ed. 496, 504; *City of Detroit v. Detroit & H. Plank R. Co.*, 43 Mich. 140, 5 N. W. 275, 280.

The authority last cited, in an opinion by the eminent constitutional lawyer Judge Cooley, states the law on this phase of the case as follows: "It cannot be necessary at this date to enter upon a discussion in denial of the right of the government to take from either individuals or corporations any property which they may rightfully have acquired. In the most arbitrary times such an act was recognized as pure tyranny, and it has been forbidden in England ever since Magna Charta, and in this country always. It is immaterial in what way the property was lawfully acquired; whether by labor in the ordinary applications of life, by gift or descent, or by making a profitable use of a franchise granted by the state; it is enough that it has become private property, and it is thus protected by the 'law of the land.' "

After the acceptance by Crisfield Ice Manufacturing Company of the statutory franchise offer in 1902, it was beyond the reserved power of the State, by amendment, modification or repeal, to materially change this contract by substituting a new and different franchise for the one originally granted, accepted and exercised. The amendments of 1910 did not have nor could they have had, any such effect.

In the case at bar, the Crisfield Ice Manufacturing Company and the State of Maryland became parties to a contract subject to two conditions: One, that the corporation was at all times subject to regulation and control by the State, and the other that its franchise to do business as a "Class 17" public utility corporation, after it had begun to exercise it, would not be destroyed or impaired by the Legislature. No acceptance of either of these conditions was required, for they were an inher-

ent part of the contract itself which were impliedly embodied in the charter.

However, appellant claims that the corporation did "accept" the amendment made by Chapter 55 of the Acts of 1910 by requesting and obtaining a municipal franchise, with a twenty-five-year limitation, under the local law (Chapter 529), and that by so doing, accomplished the surrender of its original franchise. It is clear from the record that no "acceptance" of this general law amendment was actually given by the corporation, just as it is clear from the authorities that none was required. As stated in *Jackson v. Walsh,* supra [75 Md. 304, 23 A. 779] : "The right of the state to repeal or alter an act of incorporation was the express condition upon which the grant was made in every instance after the adoption of the constitution of 1851, and an acceptance of the grant was an unequivocal, as it was an irrevocable, acceptance of that condition. This right could have been no more effective had it been written in the charter in the very words of the constitution itself; and its exercise by the legislature cannot, when it invades no vested right of property, be successfully resisted in the courts as an infringement of a contract, because the constitutional provision is a term of stipulation embodied in the contract to which the state and the incorporators are equally parties." The significant words there are "when it invades no vested right of property." In the case at bar property rights under the original franchise had become vested and it was beyond the power of the Legislature to invade them by the amendments in question.

The basic statutory authority of the Legislature to regulate corporations is found in Section 135, Article 23, Code of 1939, and is expressed in these words: "Every corporation formed by the provisions of this article shall be subject to any and all provisions and regulations which may hereafter, by any change in or amendments of the laws of this State, be made applicable to such corporation." This statute was in force when the amendments involved in this case were enacted in 1910.

An examination of Chapter 55 of the Acts of that year, amending the general laws under which the charter of Crisfield Ice Manufacturing Company was granted, shows that it did not change or affect the "Class 17" franchise held and being exercised by this corporation and, therefore, could not be "made applicable" to it, within the meaning of Section 135, supra.

However, the appellant points to another Act of 1910 (Chapter 529) in support of its contention that the corporation lost its original franchise. This statute is a local law amending the Charter of Crisfield by giving the municipality the right to grant franchises to electrical corporations for a term not exceeding twenty-five years, and, as hereinbefore stated, is entirely independent of Chapter 55, supra.

The charter which it did actually grant to the Crisfield Ice Manufacturing Company originated and became effective for the sole purpose of facilitating a private business transaction which completely collapsed the following year. It did not cause the abandonment or impairment of the original franchise, and had nothing to do with it. This is confirmed by the further fact that the permission and approval of the Public Service Commission to any such abandonment was not sought or obtained, as required by the statute. Sec. 391, Art. 23, of the Code of 1924; Sec. 402, Art. 23, Code 1939.

The provisions of Chapter 55 of the Acts of 1910 requiring the "proper assent of the municipal authorities" to the exercise of their charter rights by electric light or power companies under the general law applied only to those corporations formed subsequent to that enactment, and not to those already in existence and exercising their franchise rights. That such a statute is not to be construed as retroactive in its application was indicated by this Court in *Kelly v. Cons. Gas, etc., Power Co.,* 153 Md. 523, 531, 532, 138 A. 487, 490. In that case, as in the one at bar, the question being dealt with concerned the power of the Legislature to amend charters and the effectiveness of such amendments. There, in

an opinion by Judge Sloan, the Court ruled that the statute under consideration—Chapter 127, Acts of 1902, providing that no use shall be made of the streets of Havre de Grace without the consent of the Mayor and City Council—was, in legal effect, an amendment of the Charter of every public utility corporation "which had not theretofore acquired rights and franchises and exercised them within the corporate limits of Havre de Grace." As to this last mentioned class the amendment had no applicability, and that same principle governs the situation in the instant case. The statute here, Chapter 55, Acts of 1910, did not give the municipality veto power over the continued exercise of the previously existing franchise, for that would have been the power to destroy or impair vested rights, and thus plainly violative of elementary principles of constitutional law.

Moreover, the municipality did not then even claim this veto power or seek to exercise it, and there was nothing in the transaction of 1917 which indicated a change in this acknowledgment of the continuing validity of the original franchise granted under the general laws of the State. It retained both its legal and its practical effectiveness as authority for its holder's operations in Crisfield, and remained a vested property right.

This necessarily means that the "Class 17" franchise, unlimited as to duration and transferrable, was not extinguished in 1917, as appellant contends, but is still outstanding and in force in the present holder of it ("Eastern Shore"). The Court concludes that, therefore, the Commission's finding (No. 1) that "protestant has a perpetual franchise to render electric service in Crisfield," is lawful and reasonable and must be affirmed, along with the Commission's two other findings numbered (2) and (3).

Having decided that the corporation presently operating in Crisfield ("Eastern Shore") is there lawfully and under the original "Class 17" franchise, it is unnecessary and irrelevant on this appeal to pass on the other franchise in question. The issue presented here is whether

the corporation is lawfully operating at all in this municipality, and having decided in the affirmative on the basis of one of the franchises claimed (Class 17), it becomes unnecessary to consider the other (Class 13).

There is no question involved here of state policy regarding municipal ownership, as contended by appellant. By the Act of 1941, Chapter 930, the city of Crisfield was not given any powers or rights in a governmental capacity, but only in a proprietary capacity, on exactly the same plane as would be possessed by any private corporation engaged in the same business, and carrying with these granted powers and rights the same obligations to submit to the governmental supervision and control of the Public Service Commission. *Littleton v. Hagerstown*, 150 Md. 163, 132 A. 773; *Crisfield v. C. & P. Telephone* Co., 131 Md. 444, 102 A. 751; *Home Owners' Loan Corporation v. Baltimore*, 175 Md. 676, 680, 3 A. 2d 747; 43 C. J. 420.

By that Act the legislature has simply declared that a municipality (Crisfield) should have the right to own and operate its own electric light and power system on certain conditions, including, specifically, the condition that it may not exercise these rights therein without the permission and approval of the Public Service Commission. The only expression of state policy on the subject is that set forth in the statutes creating the Commission, Chapter 180, page 338, Acts of 1910, by which there was delegated to this agency of government the fullest administrative authority over all corporations engaged in this line of business, whether municipal or private, subject to the one restriction that its orders must be reasonable and lawful.

This policy is not only not changed, but is confirmed, by the Act of 1941; so that the appellant, in seeking relief in the courts, is in precisely the same category as any other corporation which has failed to get from the Public Service Commission the required certificate of authority. It was faced by the necessity of proving by

clear and satisfactory evidence that the order refusing its application was either unreasonable or unlawful.

After a careful consideration of the whole case, we must conclude, as did the learned Court below, that the appellant has not met this burden of proof. On the contrary, the record shows affirmatively, in our opinion, that the Commission's order complained of is both reasonable and lawful as to all three of the findings upon which it was based. The decree sustaining this order will, therefore, be affirmed.

*Decree affirmed, costs to be paid by appellant.*