622 A.2d 763

The MAYOR AND COUNCIL OF BERLIN

v.

DELMARVA POWER & LIGHT COMPANY.

No. 1094, Sept. Term, 1992.

Court of Special Appeals of Maryland.

April 5, 1993.

Robin R. Cockey (Banks, Nason, Hickson & Sullivan, P.A., on the brief), Salisbury, for appellant.

Thomas P. Perkins, III (Elizabeth Cooper Block, Christine J. Collins and Venable, Baetjer and Howard, Baltimore,

Dale G. Stoodley, Peter F. Clark, Wilmington, DE, on the brief), for appellee, Delmarva.

Susan S. White (Bryan G. Moorhouse, on the brief), Baltimore, for appellee, Public Service Com'n.

Argued before WILNER, C.J., and BISHOP and GARRITY, JJ.

WILNER, Chief Judge.

This is a battle between the Mayor and Council of Berlin (*i.e.*, the Town of Berlin, Maryland), on the one hand, and Delmarva Power & Light Company (Delmarva) and the Public Service Commission (PSC), on the other, over who has the authority to provide electric service to about 60 acres of land that the Town annexed in 1980 and 1982. The PSC determined that Delmarva had that exclusive right. Upon the affirmance of that determination by the Circuit Court for Worcester County, the Town has brought this appeal to us. We shall affirm.

The Town is a municipal corporation within Worcester County that has manufactured and sold electricity to customers within its borders since the early 1900's. Delmarva is a public service company with a State and Worcester County franchise to sell electric power in Worcester County. In a 1966 order (Order No. 56203 entered in Case No. 6017), the PSC demarked the service territories of the various electric companies in the State, including Delmarva and the Town. Delmarva was granted by that order the exclusive right to sell electric power in the 60 acres in question here. At the time, those 60 acres lay outside the corporate borders of the Town, and the Town therefore neither had nor claimed any right to supply service to that area.

As noted, the territory in question was annexed by the Town in 1980 and 1982. At the time of the annexations, and since, there were some customers living or conducting business in the territory who were supplied with electricity by Delmarva. A Delmarva transmission line extends through the area. In 1983, the Town sought to supply

electricity itself within that area and petitioned the PSC for an order modifying the Town's and Delmarva's service areas as established in the 1966 order. The PSC denied the petition, finding that Delmarva was supplying adequate service in the area, that to allow the Town to provide service there would result in a duplication of facilities, and that that was not in the public interest.

The Town did not appeal that decision. Instead, through its local delegates, it petitioned the General Assembly to allow it to provide service in the annexed area without PSC approval. House Bill 846, introduced into the 1983 session, would have allowed any municipal corporation in the business of supplying electricity for other than municipal purposes, in its sole discretion, to acquire the exclusive right to supply electricity within an annexed area and, also in its sole discretion, to acquire the existing electric plants of all other electric companies in the annexed area through the exercise of eminent domain. That bill did not pass. Nor did identical House Bill 948, introduced into the 1989 session. What did ultimately pass, in 1990, was House Bill 431, adding two new subsections—(c) and (d)—to Md.Code art. 78, § 53. Under subsection (c), a municipal corporation may acquire the exclusive right to supply electricity within an area annexed by the municipal corporation *if,* among other things, a petition is filed with the PSC seeking approval of the acquisition and the PSC "determines that the modification of the service territory of an electric company and the transfer of any franchise or right thereunder is in the public interest."

Unhappy with its lack of success before both the PSC and the General Assembly, the Town decided, in effect, to ignore both. In September, 1990, it amended the Town Charter to accord itself the exclusive right to provide electric service to new customers in any area annexed by the Town. The amendment provided:

"[W]henever the town shall annex an area, no electric company may thereafter extend electric service to any customer within the boundaries of the annexation (other

than to existing customers of such electric company and subject to the town's right to extend electric service to such customers as hereinbefore provided), as of the effective date of the annexation." [1]

Upon the adoption of this amendment, the Town began construction of transmission lines into the areas annexed in 1980 and 1982, intending ultimately to serve all customers in those areas, but immediately to serve two prospective customers then in the process of constructing facilities there—Atlantic General Hospital and the Worcester County Health Department. When this came to Delmarva's attention, it filed a complaint with the PSC, seeking an order confirming Delmarva's exclusive right to provide service in that area and directing the Town to halt its unauthorized solicitation of customers in the area.

The issue, as framed by the Town, was whether it could "claim for itself the right to serve *prospective* customers in the annexed territory." Notwithstanding its apparent obligation to serve *all* customers in the area, including those currently served by Delmarva (*see* note 1, *ante*), it did not assert, before the PSC, the right to serve existing customers in that territory. Its right to serve prospective customers, it averred, arose from a 1910 enactment of the General Assembly which is now part of Md.Code art. 23, § 167. That section generally authorizes any electric power company organized under art. 23 to furnish power in any city or town in which it is located, or which it adjoins. The 1910 amendment added the proviso, "after first securing the proper assent of the municipal authorities of said city or town." 1910 Md.Laws, ch. 55.

Under that 1910 amendment, the Town asserted that, as its assent was required before any electric company could

---

**1.** The parenthetical clause allowing the Town to provide service to existing customers of other utilities had reference to another addition to the charter made in 1990 which required the Town to "take over such customers from any other electric company, so long as the Town shall reimburse such electric company the depreciated book value of the distribution facilities dedicated to serving such customers."

supply service within its borders, it could (1) withhold that assent and thus deny Delmarva the right to provide service within the town borders, including any territory coming within those borders by annexation, and (2) authorize only itself, as a generator of electricity, to provide that service. It argued that Delmarva had no valid franchise to provide service in the area and that, in any event, as the Town was seeking to provide service only to new or prospective customers, its arrogation of the exclusive right to provide that service would not contravene any vested right of Delmarva.

The PSC concluded first that Delmarva had a perpetual State franchise to serve the territory in question that predated the 1910 Act, as well as a Worcester County franchise granted in 1929 to sell electricity throughout all unincorporated areas of the county. It next recounted its 1966 Order authorizing Delmarva to exercise, exclusively, its franchise in the disputed area, and that, by failing to object in that proceeding, the Town "conceded the Commission's jurisdiction over service area assignments, conceded that Delmarva had a franchise for the area assigned to it, and conceded the Company's right to exercise its franchise in the area assigned to it." The PSC then determined that, by virtue of new § 53(c) and (d), PSC had the exclusive authority to change the service territories and that its authority extended not just to serving existing customers but new ones as well. For those reasons, the PSC determined that the Town could not abrogate Delmarva's exclusive service territory on its own, but was relegated to filing a petition with the PSC. It ordered that the service territories assigned to the Town and to Delmarva in the 1966 order remain as they were.

The Circuit Court affirmed, for much the same reasons given by the PSC, and the Town now turns to us, contending that the court erred in holding (1) that Delmarva could serve consumers within the borders of the Town without permission of the Town, (2) that the Town was estopped from refusing such permission because of its participation in the 1966 PSC proceeding, (3) that the PSC could "divest"

the Town of its statutory franchise authority by asserting its service territory assignments, and (4) that the Town could not provide service to new customers in the annexed territory without first petitioning the PSC, where the statute (§ 53) "applies only to existing customers within areas annexed after the statute's enactment."

Some of these arguments overlap and may be dealt with together. We find as a matter of law from the undisputed relevant facts in this record that Delmarva does not need the Town's consent to provide service in the disputed area, that the Town has no right or authority on its own to extend electric service into that area, and that only through the procedure established in art. 78, § 53(c) and (d) can the existing service boundaries between Delmarva and the Town be altered.

The Town's arguments rest on two erroneous premises. First, it assumes that the 1910 enactment, coupled with its own authority to provide such service, means that it has the exclusive right to determine who shall provide electric service within its borders, including any territory coming within its borders through annexation, and that it does not need the permission of the PSC or anyone else to exercise that right. The Town recognizes that it cannot, through the exercise of that right, eliminate vested property rights created by the State or county governments, but it claims that, in seeking to serve only new customers in the annexed territory, it is not infringing on any vested right of Delmarva. This is so, it says, because, to have a vested right, Delmarva must have *exercised* its franchise, and, as it provides no service within the disputed territory, it has not done so.

In support of its first premise, the Town relies almost exclusively on out-of-State cases that are wholly inapposite. For the most part, they involved situations where either consent of the municipality or its electorate was Constitutionally required before a utility could extend service within the municipal borders or the municipality had authority to provide service within its borders, including annexed areas,

free of State control. That, as we shall see, is not the case here. In seeking to exercise its authority to provide electric service for non-municipal purposes, the Town is an "electric company" as defined in Md.Code art. 78, § 2(f). It is therefore a "public service company," as defined in § 2(o) of that article, and hence is subject to the authority of the Public Service Commission under § 1. The Town, in effect, has been granted a limited franchise by the General Assembly through art. 23, § 167, but the exercise of that franchise, like the exercise of any public service company's franchise, is subject to the jurisdiction and authority of the PSC. Md.Code, art. 78, § 24(a).

The undisputed facts show that Delmarva currently holds and is exercising franchises that had been granted over time to its corporate ancestors. One of those ancestors was The Electric and Ice Manufacturing Co., which, in 1909, was authorized in its charter to supply electric power to the public in Pocomoke City "and in any other town or village in the State of Maryland." That authority, emanating from the State of Maryland, predated by a year the enactment requiring municipal approval. Another of Delmarva's predecessors was the Crisfield Ice Manufacturing Company, which also acquired a State-wide franchise "unlimited in duration" to sell electricity. *Crisfield v. Public Service Comm.*, 183 Md. 179, 191, 36 A.2d 705 (1944).[2] There is no doubt, then, that Delmarva has lawful, existing franchises from the State to serve the disputed area. Those franchises indeed emanate from the State and not, as the Town suggests, from the PSC. *See Crisfield.*

It is thus the case that both the Town and Delmarva have State-derived franchises to provide electric service in the disputed territory. Art. 78, § 24(a) provides expressly that "no public service company shall exercise any franchise

---

**2.** In 1929, Worcester County granted another of Delmarva's ancestors, Eastern Shore Public Service Company, the franchise to supply electric power throughout the unincorporated areas of Worcester County, in which the Town is located. That county-wide franchise was confirmed by the County Commissioners in 1959.

granted by law except to the extent authorized by the [PSC]." Through that public general law, the Legislature has made absolutely clear that neither the Town, nor any other electric company, may exercise its franchise unfettered. Section 24(a) served as the requisite authority for the PSC, in its 1966 Order, to allocate service territories to the various companies subject to its jurisdiction. In issuing that Order, the PSC made the specific finding that:

"designation of service areas for electric utilities are in the public interest because such designation would eliminate future wasteful construction of duplicate distribution facilities, it would permit electric utilities to develop unserved portions of their service areas in the most economical manner, and it would reduce to a minimum disagreements between companies as to service areas."

It is evident to us that, even before the 1990 enactment of § 53(c) and (d), the Town had no right to extend its service area beyond that allocated to it by the PSC without prior PSC approval. The enactment of those subsections merely confirmed that principle; it was not a new limitation on the Town or a new power granted to the PSC.

This alone is a full response to the Town's contentions. The extent to which Delmarva is, or in 1980 was, actually exercising its franchise within the disputed territory is irrelevant. We note, however, the Town's argument to the contrary notwithstanding, that the evidence shows clearly that Delmarva is and has been exercising its franchise within that territory. It has been serving customers there and has a transmission line running through the area.

In light of these conclusions, it is unnecessary to address the Town's other arguments.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.